FIRPO v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. November 18, 1919.)

No. 17.

1. ARMY AND NAVY ⊚⧙40—HARBORING, CONCEALING, OR ASSISTING DESERTER.
   An attorney employed by the father of a soldier 16 years old, who had
   enlisted without the father's consent, to obtain his release on the ground
   of nonage, by advising the soldier, who was then a deserter, to remain
   away from the authorities until notified, *held* not to have "harbored, con-
   cealed or assisted" the deserter, within Criminal Code, § 42 (Comp. St.
   § 10206), which requires, to constitute either of the offenses, some posi-
   tive physical act, done with knowledge and intent to aid in the wrongful
   purpose of the deserter.

2. ARMY AND NAVY ⊚⧙40—CRIMINAL RESPONSIBILITY FOR CONCEALING DE-
   SERTER.
   To "conceal," as used in Criminal Code, § 42 (Comp. St. § 10206), pro-
   viding for punishment of any one who shall harbor, conceal, protect, or
   assist any soldier who has deserted from service, means to hide, secrete,
   or keep out of sight.
   [Ed. Note.—For other definitions, see Words and Phrases, First and
   Second Series, Conceal.]

3. ARMY AND NAVY ⊚⧙40—CRIMINAL RESPONSIBILITY FOR HARBORING DESERTER.
   To "harbor," as used in Criminal Code, § 42 (Comp. St. § 10206), pro-
   viding for punishment of any one who shall harbor, conceal, protect, or
   assist any soldier who has deserted from service, means to lodge, to care
   for, after secreting the deserter.
   [Ed. Note.—For other definitions, see Words and Phrases, First and
   Second Series, Harbor.]

   Hough, Circuit Judge, dissenting in part.

In Error to the District Court of the United States for the Eastern
District of New York.

Criminal prosecution by the United States against Joseph Firpo.
Judgment of conviction, and defendant brings error. Reversed.

Leroy W. Ross, U. S. Atty., of Brooklyn, N. Y. (H. Harvey Har-
wood, of New York City, of counsel) for the United States.

Joseph G. M. Browne, of New York City, for plaintiff in error.

Before WARD, HOUGH, and MANTON, Circuit Judges.

MANTON Circuit Judge. The plaintiff in error was tried for hav-
ing violated section 42, P. L. (chapter 4 of the Act of March 4, 1909,
35 Stat. 1097 [Comp. St. § 10206]), on three counts of an indictment
returned against him by the grand jury, which accuse him as follows:

(1) "Joseph A. Firpo, late of the borough of Brooklyn, county of Kings, city,
state, and Eastern district of New York, heretofore, to wit, at various times
during the period from on or about the 13th day of October, 1917, up to on
or about the 14th day of May, 1918, at the borough of Brooklyn, county of
Kings, city, state, and Eastern district of New York, and within the jurisdic-
tion of this court, did unlawfully and feloniously assist James Shillace, said
James Shillace being at said times a soldier in the military services of the Unit-
ed States, who had deserted from said service, as said Joseph A. Firpo well
knew; that is to say, he, the said Joseph A. Firpo, did at the times and places

aforesaid, by advice and instruction, assist said James Shillace in continuing his desertion and avoiding apprehension and seizure by the military authorities; against the peace and dignity of the United States, and contrary to the form of the statute in such case made and provided."

(2) "Joseph A. Firpo, late of the borough of Brooklyn, county of Kings, city, state, and Eastern district of New York, heretofore, to wit, at various times during the period from on or about the 13th day of October, 1917, up to on or about the 14th day of May, 1918, at the borough of Brooklyn, county of Kings, city, state, and Eastern district of New York, and within the jurisdiction of this court, did unlawfully and feloniously conceal James Shillace, said James Shillace being at said times a soldier in the military service of the United States, who had deserted from said service, as said Joseph A. Firpo well knew, against the peace and dignity of the United States, and contrary to the form of the statute in such case made and provided."

(3) "Joseph A. Firpo, late of the borough of Brooklyn, county of Kings, city, state, and Eastern district of New York, heretofore, to wit, at various times during the period from on or about the 13th day of October, 1917, up to on or about the 14th day of May, 1918, at the borough of Brooklyn, county of Kings, city, state, and Eastern district of New York, and within the jurisdiction of this court, did unlawfully and feloniously harbor James Shillace, said James Shillace being at said times a soldier in the military service of the United States, who had deserted from said service, as said Joseph A. Firpo well knew, against the peace and dignity of the United States in such case made and provided."

The law said to be violated provides:

*Enticing Desertion from the Military or Naval Service.*—"Whoever shall entice or procure, or attempt or endeavor to entice or procure, any soldier in the military service, or any seaman or other person in the naval service of the United States, or who has been recruited for such service, to desert therefrom, or shall aid any such soldier, seaman, or other person in deserting or in attempting to desert from such service; or whoever shall harbor, conceal, protect, or assist any such soldier, seaman, or other person who may have deserted from such service, knowing him to have deserted therefrom, or shall refuse to give up and deliver such soldier, seaman, or other person on the demand of any officer authorized to receive him, shall be imprisoned not more than three years and fined not more than two thousand dollars." Section 42, c. 4, P. L.; Act of March 4, 1909, c. 321, 35 Stat. 1080, 1097.

The evidence offered indicated that one James Shillace, a soldier, then said to be 16 years of age, left his duties on October 2, 1917, and during the interval between that day and March 25, 1918, remained away from the camp and apparently did not fulfill his obligations as a soldier in the army of the United States. He was a witness on behalf of the government, as were his father, his sister-in-law, his wife, and his brother-in-law. That he was a deserter from the army we may assume, from his conduct in remaining away from the performance of his duties, and because of his express statements that he did not intend to return.

[1] The plaintiff in error is an attorney at law, and engaged in the practice of his profession in the borough of Brooklyn, city of New York. He was consulted by Shillace's father in a proposed application to secure his son's release from the army upon the theory that he was not of sufficient age. He accepted a retainer of $30, with a promise of the payment of $70 if successful. Mr. Shillace, Sr., testified to the employment of the attorney, who advised him to have his son remain away from the authorities. The soldier says he visited the plaintiff in

error on March 25th, and he was introduced to the plaintiff in error and sat down—

"and I asked him under what grounds he was going to get me out. He says, 'All right, under what grounds; I know the grounds I am going to get you out on;' so he told me, personally, myself, to stay away from the house; to stay away from all military authorities and the police; and my sister-in-law says to me, 'Would it be any good if I go to Jersey City;' he said, 'No, it would be better if you go to Connecticut.' He·asked me if I had any relations in Connecticut, so I went to Connecticut. I stayed there for three weeks, and he said, 'I will let Mrs. Dezage know when I want you here.' That is my sister-in-law. I received no answer from him whatever. So, I come back, and I stood home, and I hired a furnished room at Bedford avenue, and he told me, 'If anybody should catch you, tell them your name is not James P. Shillace.'"

This is the only occasion upon which Shillace saw his attorney. Can it be said that from this occurrence there is any evidence to warrant the District Judge in submitting to the jury, as a question of fact, the guilt of the accused?

That there was sufficient to raise a jury question as to whether or not Shillace was a deserter we may assume, but we are of the opinion that upon this mere occurrence the plaintiff in error cannot be charged with assisting Shillace in continuing his desertion and avoiding apprehension and seizure by the military authorities. Plantiff in error was lawfully engaged in the practice of his profession and was consulted by a client. It was not only lawful for him to advise with the soldier, but, indeed, it was his duty to give him his best professional advice as to his rights under the circumstances disclosed by the narration of the facts surrounding Shillace's position. For him to have closed the door against a consultation would have been a breach of his professional obligations. Assuming that Shillace was a deserter, it was true that he was subject to arrest and incarceration by the military authorities. But in the consultation with his attorney he disclosed an apparent ground upon which to base a claim that he was entitled to his release from the army. He says he was 16 years of age when he voluntarily enlisted without his father's consent, and was but 16 years old when he left the service. His father first sought the lawyer for advice, and later brought his son to the lawyer's office. There may be a debatable question as to the professional obligations of the plaintiff in error to make known to the military authorities where the soldier was to be found; but can it say that the failure so to do constituted a criminal offense? We think not.

Was it offensive to the statute above referred to for the plaintiff in error to advise his client to remain away from the authorities? It was the duty of the lawyer to his client to assist him in securing his release from the army. If there appeared to the plaintiff in error reasonable grounds for the expectation of success, it was not criminal for him to advise his client to remain away from the authorities. At least, such would be true, in the absence of bad faith or criminal intent on the part of the plaintiff in error. There is testimony that a representation was made to the attorney that the soldier was home on sick leave and could not return to his duties. Indeed, the soldier testified that he only became a deserter from the time he visited the law-

yer. Without knowledge of the fact of a desertion, there could not be said to be a criminal intent to assist Shillace.

To assist, as used in the statute, implies guilty knowledge and felonious intent; knowledge of the wrongful purpose of the deserter. To assist, after such knowledge and intent, is serving the purpose of the deserter. It encourages him and aids him, and thus the offense may be committed. To assist, like to abet, involves some participation in the criminal act. Hicks v. U. S., 150 U. S. 450, 14 Sup. Ct. 144, 37 L. Ed. 1137.

To advise a client to commit an act which is a crime makes the lawyer an accomplice, and at common law he would be an accessory. We are not satisfied from this record that there was evidence to submit to the jury indicating a knowledge on the part of the plaintiff in error that Shillace was a deserter and was continuing in his desertion from the service of the army of the United States at the time when he was advised to remain away and go to Connecticut, where it was suggested that he had relatives. Indeed, the plaintiff in error's view seems to have been that Shillace was wrongly kept in the army and that he was entitled to discharge by reason of his age. We think the plaintiff in error was giving his best advise and opinion to his client, without any intent of violating the law, and in doing so what he thought was within the realm of his professional obligations to his client.

[2, 3] He has been convicted on the second count of concealing, and on the third count of harboring, a deserter. We find nothing in the charge defining the intendment of these terms as used in the statute. Nor do we find any evidence in the record upon which to base such a charge. To conceal, as used, means to hide, secrete, or keep out of sight. To harbor, as used, means to lodge, to care for, after secreting the deserter. The statute is aimed to make it a crime knowingly to harbor or conceal a deserter after knowledge of the existence of his status as such, and this with felonious intent to shield him from the law.

We find nothing in this record which would justify submitting either the second or third count to the jury. No assistance or relief was given to Shillace, known to be a deserter by plaintiff in error, in order to help him continue his desertion. The conduct of the plaintiff in error was consistent with what might be innocent conduct in fulfilling his professional duties as he saw them. The motion for the direction of a verdict of not guilty should have been granted upon this record.

The judgment of conviction on each of the counts is reversed.

WARD, Circuit Judge (concurring). My concurrence as to the first count of the indictment is on the ground that the word "assist," being associated in the act with the words "harbor, conceal, protect," contemplates some positive act; e. g., giving the deserter transportation away from the scene of his offense, or giving him civilian's clothes to substitute for his uniform. I do not think it applies to advice of a lawyer, employed to get the deserter discharged from the service because of nonage, that he had better go to Connecticut in the meantime.

HOUGH, Circuit Judge (dissenting in part). Shillace was over 16 and under 18 when he enlisted. Therefore he could be and was a deserter as fully as any adult. Solomon v. Davenport, 87 Fed. 318, 30 C. C. A. 664; Hoskins v. Pell, 239 Fed. 279, 152 C. C. A. 267, L. R. A. 1917D, 1053. Firpo, as an attorney, was peculiarly bound to know this law.

Desertion is not a single act, like striking a blow; it is a persistent absence from duty, with the intent of staying away, and is therefore a continuing offense. Firpo knew that this was his client's condition; the jury has so found. When the attorney advised his deserter client to go and hide and deny his identity (as the jury has also found), he counseled a continuance in crime, and the commission of a continuing crime.

There are only two reasons assignable (so far as I can see) why this conduct was not an "assisting" within the statute: (1) It would not make Firpo an accessory after the fact; (2) an attorney can lawfully give a kind of assistance forbidden to the laity. And I think both reasons are in effect advanced by the majority of this court.

As to the first, it is a very strict and narrow definition (or rather a partial description) of assistance to say that it is any word or act which would render the actor liable as an accessory after the fact; and that Firpo's behavior made him such accessory, see the line of decisions in 16 Corp. Jur. p. 138 et seq. As to the second point, I am referred to no authority compelling a ruling which seems to me dangerous alike to the bar and the commonwealth.

For these reasons, I dissent from reversal of conviction under count 1.

The words "harbor" and "conceal," whether considered separately or with their context, evidently refer to some physical act tending to the secretion of the body of the deserter. The concealment is not of the crime, but specifically of the criminal. Therefore I think no conviction should have been allowed on the second and third counts.

To the extent indicated I dissent.