## UNITED STATES v. SHAPIRO et al.

### No. 378.

Circuit Court of Appeals, Second Circuit.

July 27, 1940.

892

Wegman & Climenko, of New York City (J. Bertram Wegman and Jesse Climenko, both of New York City, of counsel), for appellants.

John T. Cahill, U. S. Atty., of New York City (Jerome Doyle and William F. Young, Asst. U. S. Attys., both of New York City, of counsel), for appellee.

Before SWAN, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The main question presented by this appeal, and the only one which need be considered in this opinion, is whether the indictments charge a crime. Each indictment charges that the appellants and other persons (including the fugitives) who were named as conspirators but not as defendants, illegally conspired to violate section 246 of Title 18 of the United States Code, 18 U.S.C.A. § 246. This section makes it a criminal offense to "harbor or conceal" any person for whose arrest a federal warrant has been issued, so as to prevent his discovery and arrest, after notice or knowledge of the fact that a warrant has been issued for the apprehension of such person. One indictment names as the fugitive Jacob Shapiro, for whose arrest a

bench warrant was issued on June 14, 1937; the other Louis Buchalter, who became a fugitive on July 6, 1937. The specific acts which the appellants were charged with conspiring to do, with knowledge that the fugitive named in the indictment was such, were to cause $250 per week to be paid to the fugitive, "thereby affording him monies which he could use and employ to enable himself to evade arrest and apprehension on said warrant," and to cause certain entries to be made on the books of the corporate appellants to conceal the payments to the fugitive. Hence the precise question presented is whether payment of money to a known fugitive for him to use in enabling himself to evade arrest can be deemed a harboring or concealing of him within the meaning of section 246 of Title 18. If it cannot, a conspiracy to do it is not a criminal conspiracy.

It will be observed that the statute, whose full text is printed in the margin,* defines three distinct crimes: (1) To rescue or attempt to rescue from the custody of an officer any person arrested upon a warrant or other federal process; (2) directly or indirectly to aid, abet or assist any person so arrested to escape; and (3) to harbor or conceal any person for whose arrest a federal warrant has been issued, so as to prevent his discovery and arrest, after notice or knowledge of the issuance of the warrant. It is not without significance, we think, that the prohibitions of clauses (2) and (3) are phrased so differently. Any aid whatever in the escape of a person under arrest is forbidden; but the language which prohibits conduct preventing the discovery and arrest of a fugitive is not similarly broad. There the acts forbidden are to "harbor or conceal." These are active verbs, which have the fugitive as their object. This was recognized by this court in Firpo v. United States, 2 Cir., 261 F. 850, 851, which involved another section of the

---

* "§ 246. (Criminal Code, section 141.) Rescuing prisoner; concealing person from arrest. Whoever shall rescue or attempt to rescue, from the custody of any officer or person lawfully assisting him, any person arrested upon a warrant or other process issued under the provisions of any law of the United States, or shall, directly or indirectly, aid, abet, or assist any person so arrested to escape from the custody of such officer or other person, or shall harbor or conceal any person for whose arrest a warrant or process has been so issued, so as to prevent his discovery and arrest, after notice or knowledge of the fact that a warrant or process has been issued for the apprehension of such person, shall be fined not more than $1,000, or imprisoned not more than six months, or both."

same statute forbidding any person to "harbor, conceal, protect, or assist" a deserter from the army. 18 U.S.C.A. § 94. Although Judge Hough dissented as to the meaning of "assist" and thought it should include advising the deserter to hide from the military authorities, he agreed with the other two members of the court that "harbor" and "conceal" "refer to some physical act tending to the secretion of the body of the offender." Judge Manton, writing for the majority, said at page 853 of 261 F.: "To conceal, as used, means to hide, secrete, or keep out of sight. To harbor, as used, means to lodge, to care for, after secreting the deserter." Similar definitions are given in Susnjar v. United States, 6 Cir., 27 F.2d 223, 224. They accord with the definitions given in standard dictionaries. See Webster's New International Dictionary, 2d Ed.; Bouvier's Law Dictionary, Rawle's Third Revision. To pay money to a fugitive so that he may shelter, feed or hide himself is not within the accepted meanings of to "harbor or conceal" him.

The government relies upon the case of Piquett v. United States, 7 Cir., 81 F.2d 75, certiorari denied, 298 U.S. 664, 56 S.Ct. 749, 80 L.Ed. 1388. There the conspirators performed a surgical operation upon the person of a fugitive from justice so as to obliterate his finger prints and change his facial appearance. This was held to be a conspiracy to conceal the fugitive for the purpose of preventing his arrest, and to fall under the ban of the statute we are discussing. We have no disagreement with this decision. A physical act was done to the body of the fugitive to hide his identity. It was like supplying him with a disguise, which concededly would be within the interdiction of the statute.

The government urges that whether one secretes a fugitive in one's home, or rents a room for him at a hotel, or gives him money to enable him to avoid arrest in any way of his own choosing, one's conduct differs only in degree but not in principle, and the latter type of assistance, no less than the others, is within the purpose of the statute, namely, to suppress the evil of aiding fugitives from justice to remain at large. But the statutory language does not permit of the interpretation that Congress intended to punish every form of assistance to a fugitive. As already pointed out, any degree of assistance was made criminal in the matter of aiding an escape, but when dealing with preventing detection of a fugitive, Congress used more limited language; hence differences in degree of the assistance rendered cannot be brushed aside. As the Supreme Court said in United States v. Weitzel, 246 U.S. 533, 543, 38 S.Ct. 381, 383, 62 L.Ed. 872: "Statutes creating and defining crimes are not to be extended by intendment because the court thinks the legislature should have made them more comprehensive." Numerous similar warnings could be cited, but it will suffice to mention United States v. Chase, 135 U.S. 255, 261, 10 S.Ct. 756, 34 L.Ed. 117; United States v. Harris, 177 U.S. 305, 310, 20 S.Ct. 609, 44 L.Ed. 780. No problem is here involved of modernizing the meaning of the statute in order to reach a new form of the original evil intended to be suppressed, for the form of assistance under discussion could be as old as money itself.

For the foregoing reasons we believe that the statute cannot be interpreted to cover a payment of money to be used by a fugitive in any way he may choose in order to avoid arrest. The demurrers to the indictments should have been sustained. The proof goes no further than the allegations of the indictments. The judgments of conviction must therefore be reversed. It is so ordered.