## Commonwealth v. Brownawell

*Gary E. Hartman, District Attorney,* for Commonwealth.

*G. Henry Seaks, II,* for defendant.

KREIDER, *S.J., Specially Presiding,* August 29, 1979—Defendant, Sharon Brownawell, presented a combined motion for arrest of judgment and/or for a new trial after her conviction by a jury on Count I of an information filed by the district attorney charging her with hindering apprehension or prosecution of another.[1]

Count I alleged that defendant "did . . . unlawfully, with intent to hinder the apprehension, prosecution, conviction or punishment of Robert E. Dell for crime, harbor him at her residence and did conceal his presence at other locations, . . . fully cognizant . . . that he was being sought by police officers and that a warrant for the arrest of Robert E. Dell had been issued."

---

1. At the close of the Commonwealth's evidence, the court sustained defendant's demurrer to Count II charging conspiracy but refused the demurrer to Count I. Thereafter, the district attorney announced that he would not ask for a conviction on Count III which was another conspiracy charge.

Defendant's conviction was based on section 5105(a)(1) of the Crimes Code, 18 C.P.S.A. §5105, which provides: "Section 5105. Hindering apprehension or prosecution  (a) Offense defined. —A person commits an offense if, with intent to hinder the apprehension, prosecution, conviction or punishment of another for crime, he:  (1) harbors or conceals the other . . ."

## FACTS

The evidence established the following facts:

(1)  For a period of several weeks prior to August 6, 1977, Robert E. Dell stayed off and on at the residence of Ronald Harlow.

(2)  During this period of time, defendant, Sharon Brownawell, stayed at the residence of Ronald Harlow living in a state of common law marriage with him.

(3)  On August 6, 1977, at about 9 a.m. the Pennsylvania State Police went for the first time to the residence of Ronald Harlow with a felony warrant for Robert E. Dell. While the police were present at the Harlow residence, Dell was not on the premises, but the police questioned Harlow and defendant as to Dell's whereabouts.

(4)  In response to questions directed to defendant by the police officers, defendant stated that she did not know Dell, that he had not been staying at the residence of Ronald Harlow, and that she did not know whether Dell was then in the possession of Harlow's car.

(5)  Later, on August 6, 1977, at about 1 p.m., defendant voluntarily came to the State Police barracks and admitted to the investigating police officer that she did know Dell, that he had stayed at the Harlow residence off and on for several weeks. Earlier that morning prior to the arrival of the state

police, Dell had taken Harlow's car and had driven away. Prior to the arrival of the state police on August 6, 1977, defendant had "heard talk" around the house that Dell was wanted by the police but did not know what the charge was.

(6) Harlow's car was a black 1949 Chevrolet which was unique in nature.

(7) Dell was arrested and taken into custody on August 10, 1977.

## DISCUSSION

The Commonwealth's basic contention is that defendant, knowing that Dell was wanted by the police and, with the intent to hinder his apprehension or prosecution, *harbored* and *concealed* his whereabouts, and that her untruthful statement that she did not know him or his whereabouts, evidenced an intention to hinder his apprehension or prosecution.

It should be noted at the outset that defendant was *not charged,* either in the complaint or the information with volunteering false information to a law enforcement officer.[2] Moreover, the district attorney stated at the trial that he did *not* seek a conviction under subsection 5 and reiterated his position in opposing defendant's demurrer: "We're not proceeding on 5105 A5 and we're not using the statements for that purpose. We're using the statements as an indication of a guilty mind." The statement was admitted in evidence for that purpose only.

2. Subsection 5 of section 5105(a) prohibits volunteering false information to a law enforcement officer.

The pivotal question before us is whether defendant did unlawfully harbor Dell at the Harlow residence or conceal his presence at other locations.

The Commonwealth's brief asserts that no cases are cited therein "because it is the opinion of the Commonwealth that the issues raised are matters of fact and factual interpretation. The discretion of the jury is without restraint in this critical area."

Defendant's brief states that "Pennsylvania case law is minimal and research has not revealed a case on point" but it calls attention to various decisions of the Federal courts on "Harboring" and "Concealing" which are illuminating and relevant to the issue before us. It should be kept in mind, as the brief avers, that: "One's silence or failure to act, once it is known that some one else committed a crime, is not sufficient to convict one of being an accessory after the fact," citing: Com. v. Giacobbe, 341 Pa. 187, 19 A. 2d 71 (1941); Com. v. Guild, 111 Pa. Superior Ct. 349, 170 Atl. 699 (1934).

In the case at bar, there is no evidence that defendant physically "harbored" or "concealed" Dell or caused the same to be done by another. After she and her husband separated, she took her four and one-half year old daughter and went to live in a house leased to and occupied by Ronald Harlow. Between the date of her arrival on July 20, 1977, and her interrogation by the police on August 6, 1977, Dell and his girl friend stayed at the Harlow house at intervals. There is not the slightest evidence that anyone other than Harlow, the lessee, was the head of the house. Although defendant admitted that she had heard talk that Dell was wanted by the police, there was no evidence that she knew why he was wanted or was aware that

there was a warrant for his arrest. Dell was not present at the Harlow residence when defendant was being questioned there by the police and there is no evidence that she knew Dell's whereabouts at any time when he was absent from the Harlow premises.

In United States v. Foy, 416 F. 2d 940, 941 (7th Cir. 1969), the court in interpreting 18 U.S.C.A. §1071 stated: "Here, the false statement of defendant that he did not know where Ryan was, without any further acts of concealment, did not impose a real barrier to the discovery of Ryan . . . we do not think that a failure to disclose the location of a fugitive is the type of assistance contemplated by 'harbor and conceal' as used in §1071."

Another enlightening case on the interpretation of "Harbor and Conceal" is United States v. Shapiro, 113 F. 2d 891 (2d Cir. 1940). There the court construed 18 U.S.C.A. §246, the predecessor of section 1071, and held that the words "Harbor" and "Conceal" must be construed narrowly and cited Firpo v. United States, 261 Fed. 850 (2d Cir. 1919), which involved another section of the same statute forbidding any person to "harbor, conceal, protect or assist" a deserter from the Army: 18 U.S.C.A. §94. In Firpo, the court held that "Harbor" and "Conceal" "refer to some *physical* act tending to the secretion of the body of the offender" (emphasis supplied) and stated that, at page 853: "To conceal, as used, means to hide, secrete or keep out of sight. To harbor, as used, means to lodge, to care for, after secreting the deserter."

In view of the facts and circumstances in the present case and the law applicable thereto, we are convinced that the evidence was not sufficient to

sustain a conviction on Count I and that the demurrer thereto should have been allowed. Accordingly, we enter the following

## ORDER

And now, August 29, 1979, the motion in arrest of judgment is granted. The verdict is stricken off, the charges are dismissed and defendant, Sharon Brownawell, is discharged.