**U.S.**

v.

**Hanny Fouad BAHNA.**

No. M 05–2537M–VBK.

United States District Court,
C.D. California.

Dec. 20, 2005.

Michael Proctor, Los Angeles, CA, for Defendant.

**Proceedings: DECISION RE: DEFENDANT'S MOTION TO DISMISS COMPLAINT**

KENTON, United States Magistrate Judge.

On December 15, 2005, United States Magistrate Judge Paul L. Abrams signed a Complaint charging Defendant Hanny Fouad Bahna ("Hanny") with a violation of 18 U.S.C. § 371 (conspiracy), and issued a warrant for Hanny's arrest. Hanny made her initial appearance following her arrest before United States Magistrate Judge Victor B. Kenton on December 16, 2005. At that time, at the request of Hanny's counsel, the detention hearing [the Government moved for detention] was continued to December 20, 2005 at 3:00 p.m., Hanny was temporarily detained pending this hearing. Hanny's counsel reserved his right to move to dismiss the Complaint for failure of probable cause, and the Court ordered that Hanny's motion be filed by December 19, 2005 and the Government's opposition by December 20, 2005. The Court has now received Hanny's Memorandum of Points and Authorities re: Probable Cause, and the Government's Opposition to Hanny's Motion to Dismiss the Complaint.

F.R.Crim.P 4(a) requires that a criminal complaint and supporting affidavit set forth "probable cause to believe an offense has been committed and that the defendant has committed it." Hanny now moves to dismiss the Complaint based on lack of probable cause. Although Hanny cites authority pertaining to warrantless arrests (*see* Memorandum at 3), the Government has addressed Hanny's arguments on the merits.[1]

---

1. Magistrate Judge Abrams is unavailable to hear Hanny's Motion, and has advised this Court that he has no objection to this Court hearing Hanny's Motion to Dismiss.

Since the pending Motion will be decided based on the "four corners" of the Complaint and Affidavit, the Court will summarize the allegations contained in those documents.

The Complaint charges Hanny with a violation of 18 U.S.C. § 371, alleging that from October 12, 2005 to the present, Hanny and others known and unknown conspired and agreed to knowingly and intentionally harbor a fugitive, Mandouh S. Bahna. The accompanying Affidavit[2] indicates that Mandouh S. Bahna, M.D. ("Bahna") was indicted in this District on October 11, 2005 for conspiracy to commit health care fraud and 14 counts of health care fraud. (¶ 4.) An Arrest Warrant was issued for Bahna on October 11, 2005. (¶ 6.) Bahna had made arrangements through his counsel to self-surrender on the Arrest Warrant on October 12, 2005, but failed to appear. (¶¶ 7, 8.) On October 12, 2005, agents went to Bahna's residence to look for him, and spoke with Bahna's adult son, Michael. Agents informed Michael that they had an Arrest Warrant for Bahna, and searched the residence, but were unable to find him. (¶ 9.) Also on October 12, 2005, agents went to Bahna's business office to search for him, and informed Bahna's biller, Doina Florescu ("Doina") that they had an Arrest Warrant for Bahna. (¶ 10.) On October 12, 2005, agents again returned to Bahna's house, searching for him (¶ 11), and again went to his business office. (¶ 12.) Both searches were unsuccessful. While at the business office, agents telephoned Hanny, Bahna's wife, and told her that an Arrest Warrant had been issued for Bahna. (*Id.*) On that same date, the AUSA received a telephone call from attorney Michael Proctor indicating that he had been hired to represent Hanny, and all of Bahna's adult children in connection with the Government's efforts to find Bahna. (¶ 13.)

On December 2, 2005, agents learned that Bahna had visited a physician on October 3, 2005, and that health insurance documents had been submitted. These documents reflected that Bahna visited the physician for complaints related to chest pain, and that the physician prescribed three medications, Lipitor, Ambien, and Plavix, which were filled on November 9, 2005, about a month after Bahna failed to self-surrender. (¶ 14.) On December 2, 2005, agents spoke with a pharmacist who told them that he had filled a prescription on November 9, 2005 for these drugs, and that one of his employees walked the medications over to Bahna's office and left it with "Maria" and Doina. A refill had been called in on November 28, 2005, but had been denied because of insurance policy requirements. (¶ 15.) On December 14, the pharmacist called the case agent to indicate that Doina had called the pharmacy to have Bahna's prescriptions for the three medications refilled that afternoon. (¶ 16.) On December 14, 2005, at approximately 4:15 p.m., agents saw a silver BMW in the parking lot at Bahna's business office. Hanny had been observed driving this vehicle in the past. (¶ 17.) Agents confirmed that Bahna's prescription had been filled on that date and dropped at his business office. (¶ 18.) Agents observed Hanny leaving the parking lot, and they surveilled her as she drove home to Bahna's residence. (¶ 20.) The Assistant United States Attorney ("AUSA") spoke with Doina's attorney and learned that on December 14, 2005, Hanny came to Bahna's business office and asked Doina to order Bahna's "heart medications" from the pharmacy which Doina did. After the pharmacy employee dropped the medications off, Hanny took the prescriptions and left the office. (¶ 21.)

**2.** All paragraph references are to the enumer-  ated paragraphs in the Affidavit.

The Government obtained a search warrant for Hanny and Bahna's residence on December 14, 2005. (¶ 22.) That evening, the Search Warrant was executed, and the following items were located at the residence:

1.  Three empty prescription bottles dated December 14, 2005 for the three medications were located in a trash can in the kitchen;

2.  On a table in the downstairs hallway were three plastic sandwich bags, each filled with pills, labeled "Plavix" and "Lipitor." The Plavix bag and a third unlabeled bag were located within the "Lipitor" bag. Also in that bag was an American Advantage credit card in the name of "M. S. Bahna" with an expiration date of 12/31/08;

3.  On that same table was a letter that instructs the recipient to notarize two marriage certificates and send them to the Egyptian Embassy in "S.F."; renew the passport if it is not valid; and have the original birth certificates for "the three kids" and have them translated into Arabic. The letter instructed the recipient to mail all of these items to an address written in a foreign language and further instructed the recipient to "Delete your e-mail coming from me as soon as you read it. Just respond as a new document. Keep notes for yourself on a piece of paper if you need to." The letter states in a final paragraph, "I miss you a lot. What do you think about coming to Cairo or going to Greece. Once I am here, I will need to go to New Zealand from here. My love and greetings to Mom."

4.  Finally, on the same table, was a document from the First Caribbean International Bank (Cayman) Limited dated November 22, 2005 reflecting a money wire transfer of $25,000 (U.S.dollars) to Dr. Mandouh Bahna in Cairo, Egypt. (¶ 23.)

### ANALYSIS

According to Ninth Circuit Model Jury Instructions 8.16, conspiracy has the following elements:

1.  An agreement between two or more persons to commit at least one crime;

2.  That the defendant became a member of the conspiracy knowing its object and intending to help accomplish it; and

3.  One of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

In this case, the underlying crime alleged is the offense set forth under 18 U.S.C. § 1071, which provides, in pertinent part as follows:

"Whoever harbors or conceals any person for whose arrest a warrant or process has been issued under the provisions of any law of the United States, so as to prevent his discovery and arrest, after notice or knowledge of the fact that a warrant or process has been issued for the apprehension of such person, shall be [punished]."

The elements of proof under 18 U.S.C. § 1071 are, therefore, the following:

1.  That a federal warrant had been issued for the fugitive's arrest;

2.  That the defendant had knowledge that a federal warrant had been issued;

3.  That the defendant harbored or concealed the fugitive;

4.  That by such actions the defendant intended to prevent the fugitive's discovery or arrest.

(*See United States v. Yarbrough,* 852 F.2d 1522, 1543 (9th Cir.1988)).

Hanny first contends that there can be no support for a conspiracy charge because there is no evidence that Hanny conspired with another person to take part in any criminal conspiracy. The Court rejects that argument, finding that there is sufficient evidence in the Affidavit that Doing Florescu, who had been specifically advised by agents of the existence of an Arrest Warrant for Bahna, complied with Hanny's request to her to order Bahna's medications, received these medications from the pharmacy, and then, on December 14, 2005, provided them to Hanny at the business office. The more fundamental question presented by Hanny's Motion is whether the Complaint and Affidavit supply probable cause to make out a violation of conspiracy to violate 18 U.S.C. § 1071. The Government argues that probable cause is demonstrated by the acts of Doina and Hanny in filling Bahna's prescription medications on two occasions. (*See* Government's Opposition at 3.) The Government points to two occasions on which the pharmacy delivered these prescriptions to Bahna's business office: November 9, 2005 and December 14, 2005. There is no apparent evidence in the Affidavit that Hanny had any involvement in the November 9, 2005 prescription. In any event the Government also points out that Hanny repackaged the medication "in a manner consistent with mailing the medication" and then "added to the package a credit card in [Bahna's] name." (Government's Opposition at 3–4.) The Government also notes that in close physical proximity to these repackaged drugs and the credit card there was a receipt for the November 22, 2005 money wire transfer from the First Caribbean International Bank (Cayman) Limited to Bahna in Cairo, Egypt. (*See, id.*) The Government argues that on a probable cause basis, the close proximity of this receipt to the medications provides sufficient evidence that Hanny wired the $25,000 to Bahna. (*See* Government's Opposition at 4.) Finally, the Government cites the letter, inferring that it was directed to Hanny from Bahna, and argues that the instructions contained therein "establishes that [Hanny] has been and continued to receive secret communications from [Bahna] through which [Bahna] was giving her instructions to help him reestablish his life in Egypt." (*See id.*) In order to an analyze whether the Complaint passes muster under the probable cause standard, the Court will find that, on a probable cause basis, that the following facts are established by the Affidavit:

1. Hanny did affirmative acts to obtain Bahna's medications on December 14, 2005;

2. Hanny repackaged the medications in plastic bags which were labeled with the names of two of them;

3. Hanny placed a credit card in Bahna's name into one of these bags;

4. The letter communication found on the table was sent by Bahna to Hanny;

5. Hanny had knowledge of a November 22, 2005 money wire transfer of $25,000 to Bahna in Cairo, Egypt.[3]

---

**3.** The Government argues there is probable cause to find that Hanny wired the $25,000 to Bahna because, it asserts, "additionally, the cover sheet of this receipt [the bank receipt] indicates that it was sent to 'Mrs. Bahna.'" (Government Opposition at 4.) The Court notes that this information is not contained within the Affidavit supporting the Complaint. At best, however, this additional evidence, even if considered, demonstrates that Hanny *received* the bank receipt, not that she did any affirmative acts to cause or facilitate the wire transfer. Nevertheless, as the Court's analysis will determine, even if it were to be concluded that Hanny wired the funds to Bahna, this would not suffice to establish probable cause, even among the totality of the facts, for violation of the statute.

In an often-cited case, *United States v. Shapiro*, 113 F.2d 891 (2nd Cir.1940), the Court considered an appeal following a conviction under a predecessor statute to 18 U.S.C. § 1071, 18 U.S.C. § 246. The relevant portion of that statute made it an offense "to harbor or conceal any person for whose arrest a federal warrant has been issued, so as to prevent his discovery and arrest, after notice or knowledge of the fact that a warrant or process has been issued for the apprehension of such person." (*See* 113 F.2d at 893 n. 1.) The appellate court, reviewing prior case precedent, construed the terms "harbor" and "conceal" as "active verbs, which have the fugitive as their object." (113 F.2d at 892.) Thus, the Court held that, "To pay money to a fugitive so that he may shelter, feed or hide himself is not within the accepted meaning; of to 'harbor or conceal' him." (*Id.* at 893.)

Indeed, this notion of requiring some "affirmative, physical action" has been almost universally adopted in subsequent case decisions. *See United States v. Lockhart*, 956 F.2d 1418, 1423 (7th Cir.1992). The Ninth Circuit has adopted this approach, holding that,

> "Harboring and accessory liability is limited to conduct *intended* to 'prevent [the fugitive's] discovery or arrest," or "to hinder or prevent [the fugitive's] apprehension, trial or judgment. Thus, by their terms, the harboring and accessory statutes reach only conduct that is intended to frustrate law enforcement."

*United States v. Hill*, 279 F.3d 731, 737 (9th Cir.2002) (emphasis in original).

The critical factor of affirmative acts was highlighted by the Ninth Circuit's opinion in *Hill, supra,* in the following portion of the opinion:

> "Courts draw a distinction, however, between paying money to a fugitive so that he may shelter, feed or hide himself, which is not harboring, and providing

that shelter, food, or aid directly, which is harboring. '[A]ny physical act of providing assistance, including food, shelter, and other assistance to aid the [fugitive] in avoiding detection and apprehension will make out a violation of § 1071.' "

(*United States v. Hill,* 279 F.3d at 738, citing *Yarbrough,* 852 F.2d at 1543.)

Thus, it can be seen that cases interpreting 18 U.S.C. § 1071 do not encompass within the ambit of the statute the provision of *any* assistance, but, rather, they require that the assistance be intended to aid the fugitive in avoiding detection and apprehension.

In *United States v. Vizzachero,* 1997 WL 597750 (E.D.Pa. Sept. 17, 1997), the District Court reviewed a substantial number of cases to determine the types of conduct which have been found to violate the statute. Noting that case law clearly holds that making a false statement and failing to disclose a fugitive's hiding place is not the type of assistance contemplated by § 1071, the Court surveyed cases in which such conduct has been found to be sufficient. These cases included *United States v. Zerba,* 21 F.3d 250 (8th Cir.1994)(defendant discussed places she could flee with the fugitive to evade arrest, and the two fled the state together); *United States v. Andruska,* 964 F.2d 640 (7th Cir.1992)(defendant drove the fugitive across state lines and used her credit card to pay for their lodging; after being stopped by the police with the fugitive in her car, she sped away); *United States v. Bortels,* 962 F.2d 558 (6th Cir.1992)(defendant helped a fugitive evade arrest by engaging the police in a high-speed chase with the fugitive in her car); *United States v. Lockhart,* 956 F.2d 1418 (7th Cir.1992) (defendant remained a business partner of the fugitive, arranged for the fugitive to obtain a drivers license with an alias, gave the fugitive his own drivers license, and lured the FBI away

from a house where he believed the fugitive was hiding); *United States v. Erdman,* 953 F.2d 387 (8th Cir.1992) and 998 F.2d 1019, 1993 WL 245982 (8th Cir.1993)(unpublished table decision)(defendant painted the fugitive's van to make it harder to recognize, gave him a place to stay for an extended period of time, and attempted to cash checks drawn on the fugitive's account after the fugitive was unable to do so); *United States v. Yarbrough,* 852 F.2d 1522 (9th Cir.1988) (defendants picked up the fugitive, planning to get him medical treatment without arousing suspicion of the authorities, and to effectuate this plot, they purchased a car and fled with the fugitive across state lines); · *United States v. Gros,* 824 F.2d 1487 (6th Cir.1987) (defendant went "underground" with the fugitive for six years, defendant possessed blank Social Security cards, drivers licenses and birth certificates, and the fugitive used many different names and identities while on the lam); *United States v. Udey,* 748 F.2d 1231 (8th Cir.1984) and *United States v. Faul,* 748 F.2d 1204 (8th Cir.1984)(various defendants convicted under the statute were found to have done the following acts: been present at the shootout and drove the getaway car; hid one of the fugitives for several months; moved a fugitive from one location to another to prevent law enforcement from finding him); *United States v. Silva,* 745 F.2d 840 (4th Cir.1984) (defendant traveled across state lines to meet the fugitive, checked into a hotel room using an alias, arranged to meet the fugitive, and was apprehended in the motel room with the fugitive, along with guns, wigs and other materials for creating a disguise); *United States v. Bissonette,* 586 F.2d 73 (8th Cir.1978)(defendants sheltered escapees following a jailbreak and gave instructions on how they should hide in the house, bought and prepared food for them, cashed checks, and did other acts); *United States v. Whitman,* 480 F.2d 1028 (6th Cir.1973)(defendant, using an alias, rented a cabin in another state and provided shelter for a fugitive for an extended period of time); *Stamps v. United States,* 387 F.2d 993 (8th Cir.1967)(defendant arranged for fugitive to stay in a neighbor's apartment, and did other acts); *United States v. Giampa,* 290 F.2d 83 (2nd Cir.1961)(defendant rented an apartment for a fugitive under an assumed name, shopped for him several times a week, and attempted to bar federal agents from the fugitive's apartment). Additional cases are cited in *Vizzachero,* all of which have the common element of affirmative physical acts performed by the defendant with the intent of aiding the fugitive to avoid detection and apprehension.

In view of this consistent approach by the Courts, the acts set forth in the Affidavit must be individually examined to determine their sufficiency under the probable cause standard. As to the wire transfer of funds and the credit card, the mere supplying of financial assistance has been clearly held in the Ninth Circuit not to constitute acts of harboring or concealing. (*See United States v. Yarbrough,* 852 F.2d at 1543.) Thus, a distinction is made between supplying money or funds to enable a fugitive to live, and using funds directly to purchase such things as apartments, vehicles, or other commodities.[4]

With regard to the medication, the Court has not been presented with evidence which is sufficient, even on a probable cause basis, to establish that Hanny's providing of this medication was intended to assist Bahna to avoid apprehension or detection. The Government simply concludes, without any evidence, that Hanny

---

**4.** As indicated previously, however, the Affidavit at best establishes that Hanny *received* the receipt, not that she had any involvement in the transfer of the funds.

intended to provide the medication to Bahna to prevent him from being apprehended by authorities. (*See* Government Opposition at 7.) There is simply no evidence whatsoever to establish this fact. While the Court can foresee hypothetical situations in which providing medical or drug assistance to a fugitive might satisfy the statutory requirements of 18 U.S.C. § 1071, such a showing has not been made by the Affidavit in this case.

The letter—assuming it was authored by Bahna and sent to Hanny—adds nothing to the probable cause equation.

■ Hanny argues that, in any event, her acts are constitutionally protected activity, citing the discussion in *United States v. Hill,* 279 F.3d 731 (9th Cir.2002). The Court rejects the contention that otherwise innocent acts, even committed between spouses, cannot constitute harboring or concealing under the statute, and *Hill* does not hold to the contrary.

For the foregoing reasons, the Court finds that the Affidavit is not supported by probable cause to make out a violation of 18 U.S.C. § 371. Hanny's Motion is **GRANTED**. The Complaint is ordered dismissed, and Hanny will be ordered released forthwith.

At Government counsel's request, this Order is Stayed until 12:00 noon on December 21, 2005. If the Government fails to file an appeal of this Order to the Criminal Duty District Judge by that deadline, the Stay will be automatically lifted.

**IT IS SO ORDERED.**