UNITED STATES of America,
Plaintiff–Appellee,

v.

Ramona Jean BURROUGHS,
Defendant–Appellant.

No. 88–2383.

United States Court of Appeals,
Fifth Circuit.

June 13, 1989.

H. Michael Sokolo, Asst. Federal Public Defender, Roland E. Dahlin, II, Federal Public Defender, Houston, Tex., for Burroughs.

Michael J. Brown, Houston, Tex. (Court-appointed), for defendant-appellant.

Frances H. Stacy, Paula C. Offenhauser, Asst. U.S. Attys., Henry K. Oncken, U.S. Atty., Tom Roepke, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before BROWN, WILLIAMS and JOLLY, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Following her conviction for conspiracy to manufacture phenylacetone under 21 U.S.C. § 841(a)(1) and § 846, Ramona Jean Burroughs appeals.[1] She claims that the district court's failure to give the jury an instruction Burroughs requested that defined the term "willfully" demands reversal. Because this term is crucial to understanding the "specific intent" necessary to be found guilty of conspiracy and because Burrough's defense was based on an al-

---

1. Burroughs was tried jointly with her alleged co-conspirator Robert Bolin. While it is not clear from his brief the nature of his appeal, we address Bolin's appeal in a separate decision. *United States v. Bolin,* 876 F.2d 370 (5th Cir. 1989). Bolin in addition to being charged with conspiracy was charged with the substantive offense of manufacturing phenylacetone.

leged lack of this intent, we find reversible error. We grant Burroughs a new trial.[2]

## I. *Facts and Prior Proceedings*

In October 1987, Robert Bolin mail-ordered glassware flasks from Paul Mills, the owner of Industrial Chemical Supply in Houston, Texas. Bolin did not know that Mills cooperated with the Drug Enforcement Agency (DEA) by giving information as to suspicious drug activities. About a week later Bolin phoned Mills from Pearl, Mississippi, to discuss the possibility of a drug transaction. Bolin informed Mills that he manufactured illicit drugs and was looking for buyers. After a trip to Houston for supplies, Mills arranged for Bolin to meet with undercover police officer Robert DiMambro who was posing as a buyer. DiMambro agreed to purchase one pound of amphetamine that Bolin agreed to supply. Bolin however never followed through on delivery.

Several weeks later, Bolin again contacted Mills in Houston saying he still wanted to go through with a deal, but that he was going to have to manufacture the methamphetamine himself.[3] He explained that he needed the necessary chemicals and somewhere to produce the illicit drugs. It was not until this point that Burroughs entered the picture. She had accompanied Bolin from Mississippi to Houston where this contact with Mills occurred. She was present during the discussions between Bolin and Mills, although she never participated in them.

After Bolin and Mills agreed that Bolin would produce methamphetamine, they contacted DiMambro to see if he was still interested. DiMambro stated he was. After further discussion, DiMambro agreed to buy three pounds and offered a warehouse for the manufacture of the drugs.

The next afternoon Bolin, Mills, Burroughs, and DiMambro met at Industrial Chemical. Bolin selected the necessary materials at Mills' store paying $300 down out of the total purchase of $2400. Burroughs at this point offered her "Discover" charge card to cover the balance.[4] They then loaded the supplies into Burroughs' rental car and drove to a nearby warehouse. The supplies were in boxes with no labels on the outside.

Once they arrived at the warehouse, Bolin and DiMambro set up the lab. While Burroughs was either in the office adjoining the lab or watching them during this time, there is no evidence that she participated in any conversations concerning illegal drugs. The only actual involvement that she had with the manufacturing process was that she helped unload the boxes, she accompanied the group to the hardware store for additional supplies, and at one time she piled the trash from the operation in the middle of the room.

After the lab was asssembled, Bolin, DiMambro, and Burroughs sat in the office adjoining the lab for the next five and a half hours. Burroughs during this period sat around reading magazines and drinking soft drinks. DiMambro testified that once Burroughs commented while she looked out the window at the rain that "this was a good day to do this." She also told DiMambro that he could learn from Bolin because he was a good chemist.

At around 11:30 that night, Bolin and Burroughs returned to their hotel leaving

---

**2.** Other arguments on appeal made by Burroughs do not need to be addressed because of our reversal on the jury instruction. Briefly, her claims include that the evidence was insufficient to convict her, that she should have been granted her motion to sever her trial from the trial of her alleged co-conspirator Bolin, that her sentence was based on materially erroneous information, and that the district court applied the United States Sentencing Guidelines incorrectly.

**3.** Burroughs and Bolin were charged with conspiracy to manufacture phenylacetone because

that was the form of the substance at the time of the arrest. Phenylacetone is a purcursor chemical to methamphetamine and amphetamine.

**4.** Burroughs claims that she did not offer the card for payment. Testimony supporting Burroughs' story included Mills' admission that the store had discontinued taking credit cards several months before this transaction. There was also never any imprint of her card made by Mills. It may be that the card was merely produced for identification purposes.

DiMambro to monitor the reaction. When they returned the following morning, they were arrested.

Bolin and Burroughs were charged with conspiracy to manufacture phenylacetone, and Bolin was charged additionally with one count of manufacturing. They were tried jointly. At their trial, Burroughs' defense was that she was only present because of Bolin and that her relationship with Bolin was strictly romantic. She explained that she had known Bolin for around ten years because they had been neighbors, but that after he moved away four years ago, she had not seen him until a chance meeting. She explained that they then began seeing each other and that she fell in love with him. Burroughs was working fifteen-hour days, six days a week during this time so that they did not see each other very often.

Burroughs explained that she accompanied Bolin to Houston because she needed to get away and wanted to spend time with him, something they could not do in her hometown because he was married. Upon his instruction, she purchased airline tickets to Houston with her Discover credit card. When the two arrived in Houston, she also rented a car with her Discover card. She maintained throughout her testimony that she only accompanied Bolin because she was in love with him and that she had no idea that illegal drugs were being manufactured even though she was present throughout all the meetings and at the warehouse. She also denied offering her credit card as payment for the supplies.

To support this defense, she offered an instruction to the jury defining the term "willfully" as it is used in addressing the specific intent necessary for a finding of conspiracy. The district court denied the inclusion of the definition in the instructions, stating that since conspiracy to manufacture illegal drugs is not a specific intent crime the definition was not correct. The district court instead supplied a different definition of "willfully" in the charge.

The jury found Burroughs and Bolin both guilty of conspiracy and Bolin guilty of manufacturing the illegal substance.

We consider here the timely appeal by Burroughs.

## II. *The Refused Definition*

The court defined the offense of conspiring to manufacture phenylacetone in the charge to the jury as follows:

For a defendant to be found guilty of this conspiracy, the prosecution must prove four things beyond a reasonable doubt: Two or more persons in some way came to an understanding to accomplish a plan to manufacture phenylacetone; the defendant willfully became a member of that conspiracy; at least one of the participants, during the existence of the conspiracy, knowingly committed at least one act to fulfill the plan; and the act was a willful effort to manufacture phenylacetone ...

The evidence does not need to show that the participants in the conspiracy had an express agreement.

The evidence need not establish that every conspirator was aware of or participated in every aspect of the conspiracy.

A person does not become a participant in the conspiracy if he has no knowledge of a conspiracy and only happens to act in a way which advances some purpose of the conspiracy.

The court then over Burroughs' objection instructed the jury that "the word 'knowingly' or 'willfully' in these instructions means that the act was done voluntarily and intentionally and not because of accident or mistake." Burroughs had requested a definition of "willfully" from the Fifth Circuit pattern instructions that the court refused. The requested definition defined "willfully" to mean that "the act was committed voluntarily and purposely, with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law." U.S. Fifth Circuit District Judges Association Pattern Jury Instruction (Criminal), Basic Instruction 9A, at 21 (1983).

■ The district court misperceived the necessary elements in a conspiracy charge. The court treated a drug conspiracy charge as requiring only general intent. Drug

conspiracy, however, is a specific intent crime. As such, it requires the government to prove that "the defendant voluntarily and intentionally violated the law." *United States v. Basey*, 816 F.2d 980, 1002 (5th Cir.1987); *United States v. Gomez*, 776 F.2d 542, 548–49 (5th Cir.1985). *See also United States v. Davis*, 583 F.2d 190, 193 (5th Cir.1978) ("the requirement of willfulness connotes a voluntary, intentional violation of a known legal duty"). The jury should have been required to find that Burroughs intended to do something unlawful. The charge as given failed to require that finding.

The district court, of course, had substantial latitude in framing its instructions. *United States v. Kimmel*, 777 F.2d 290, 293 (5th Cir.1985), *cert. denied*, 476 U.S. 1104, 106 S.Ct. 1947, 90 L.Ed.2d 357 (1986). Accordingly, its refusal to deliver a requested instruction constituted reversible error only if the instruction:

> "(1) is substantially correct; (2) was not substantially covered in the charge actually delivered to the jury; and (3) concerns an important point in the trial so that the failure to give it seriously impaired the defendant's ability to present a given defense."

*United States v. Mollier*, 853 F.2d 1169, 1174 (5th Cir.1988) (quoting *United States v. Grissom*, 645 F.2d 461, 464 (5th Cir. Unit A May 1981). Here the government cannot dispute the legal accuracy of the proffered definition. *See United States v. Fooladi*, 746 F.2d 1027, 1030 (5th Cir.1984), *cert. denied*, 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 382 (1985) (same definition of "willfully" from the Fifth Circuit pattern jury instructions accepted as adequate). Thus our focus is on the second and third requirements of *Mollier* in ascertaining the harmlessness of the error by the district court.

### A. *The Second Requirement: A Lack of Coverage of the Definition of "Willful"*

■ Despite the misperception by the district court on the intent element of conspiracy, the government argues that Burroughs' defense was adequately covered elsewhere in the charge. *United States v. Rubio*, 834 F.2d 442, 447 (5th Cir.1987). The government points to the following language in the charge:

> the mere presence at the scene of a crime, mere association with people involved in a crime, or knowledge that a crime is being committed is not sufficient to establish that a defendant was a conspirator unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.

The government argues that this language gave the jury the opportunity to find Burroughs merely a "spectator." This language, however, is not enough. As long as the jury found Burroughs' actions "voluntary" and not because of "accident," Burroughs' defense was destined to fail under the instruction given. The above language does not address the requisite intent to break the law by her "voluntary" actions. It thus does not compensate for the district court's incorrect definition of "willful" or its omission of any reference to "specific intent," "unlawfulness," "purposeful intent to violate the law," or any like language that would have suggested the need to find specific intent.

■ The closing arguments also did not adequately present "specific intent" to the jury. Closing arguments do not replace the words of the judge. Where the defendant has otherwise demonstrated reversible error, as is the case here, "argument alone will never suffice to compensate for an omitted instruction." *United States v. Rubio*, 834 F.2d at 447.

### B. *The Third Requirement: A Serious Impairment of Burroughs' Defense*

The definition of "willfully" was clearly crucial to Burroughs' defense that she did not have a "bad purpose" to violate the law. *See United States v. De La Torre*, 605 F.2d 154, 156 (5th Cir.1979) (concept of "willfulness" held to be "crucial to a comprehension of the conspiracy charge"). By defining "willfully" incorrectly, the district court seriously impaired this defense.

The jury under the court's charge never had to address her intent to violate the law. They only had to find that she "intentionally" and "not because of mistake" conspired to manufacture phenylacetone. For example, they properly found she intentionally was present at the warehouse. She admits that she was there on her own account. She also admits that her actions such as cleaning up were done voluntarily. What was crucial to her defense however is not what she did voluntarily but what her state of mind was as to what she was doing.

The definition by the court of "willfully" simply does not address the need to find that Burroughs desired to break the law. If the correct instruction had been given, the jury could have made the same findings of voluntary, intentional behavior by Burroughs, while nevertheless finding her not guilty because of her lack of intent to violate the law. Obviously, then, the court's leaving out the correct definition of "willfully" seriously impaired Burroughs' defense.

### C. *Mollier Distinguished*

The government urges that this case is controlled by the holding in *Mollier*. In *Mollier* we found no reversible error in the refusal of the trial court to include the defendant's instruction. In *Mollier*, however, the dispute was over the definition of "knowingly," not "willfully." 853 F.2d at 1174. The key distinction between the two cases is that the trial court in *Mollier* defined conspiracy as an agreement to accomplish "some unlawful purpose." So the jury was adequately instructed that a "specific intent" to do something unlawful had to be found. 853 F.2d at 1175. Here the district court failed to require a jury finding of unlawful purpose in the conspiracy charge.

### III. *Conclusion*

Burroughs' defense throughout her trial was that she was only present in Houston because she wanted to get away to spend time with her boyfriend, Bolin. She claimed throughout her trial that she did not know that Bolin was producing drugs

that were illegal. By failing to charge that there had to be the intent to violate the law, the jury was not properly instructed that Burroughs had to be proved to have the specific intent to violate the law to be found guilty. Burroughs' defense was substantially impaired. We must reverse and remand for a new trial.

REVERSED AND REMANDED.