IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 93-1584

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DILLARD JACKIE SMITHERS,
a/k/a "Jackie", Jr.,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Northern District of Texas

---

(July 18, 1994)

Before GOLDBERG, HIGGINBOTHAM, and EMILIO M. GARZA, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

We reverse Dillard Jack Smithers' convictions for assisting and conspiring in his brother's escape and remand for a new trial. We grapple with the concept that at some point an escape is complete and assisting the fleeing felon may constitute the crime of harboring a fugitive but not assisting the escape.

I.

Jimmy Smithers escaped from the Federal Correctional Institution in Seagoville, Texas. Despite the reality that for federal prisoners escape often may be little more than turning off the television and walking away, the crime remains that of escape. In April 1992, Jimmy Smithers' wife, Libby, began liquidating her

property and left her Texas home. While away, she executed a power of attorney authorizing Dillard Jack Smithers, Jimmy's brother, to sell what remained. Jack sold almost everything in Libby's house and sent her money from the sales.

On August 24, 1992, Jack and Libby visited Jimmy at Seagoville. The next morning, Libby and her daughter went to the house of Cathy Curry, Jack's longtime girlfriend, to pick up a flatbed truck belonging to Jimmy. Jack was there, although he usually worked at that time, and backed the truck out for Libby. That evening, Jack and Curry went to the house where Libby was staying, where Jack helped load Libby's suitcase and some tools into his van. Libby told her daughter that she was going on a canoe trip and then left in Jack's van.

On August 26 Jimmy walked away from a work detail and drove away in a truck containing clothes and money. He soon left that truck and then, either in the flatbed truck or another vehicle, picked up Libby and drove north. In Oklahoma, they stopped to buy a travel trailer for $3,000 cash, and were seen driving his flatbed truck.

On December 15, 1992, U.S. Marshals executed a search warrant on Curry's house and recovered a receipt for an express mail package sent to "Libby Shull" in Bonners Ferry, Idaho, a small town near the Canadian border. During questioning, Curry said that Jack told her she should not send anything else because that was "the quickest way for them to get caught." The marshals also searched

2

Jack's home and found a sketch allegedly showing positions for Jimmy's getaway vehicles.

U.S. Marshals captured Jimmy and Libby in Bonners Ferry on December 15, 1992. In their trailer, marshals found money bands that had held cash. They also found a calendar and expense book indicating that Jack had sent the couple $200 after the escape.

Jack Smithers was charged in two counts of a four count indictment that also named Jimmy, Libby, and Curry. Count 1 charged Jack with conspiring[1] to commit the crimes of escape,[2] assisting an escape,[3] and harboring or concealing a fugitive.[4] Count 3 charged him with the substantive offense of assisting an escape. Jimmy and Libby pled guilty to the offenses for which they were charged, while Jack and Curry went to trial.

At trial, Jack conceded that he had sent Jimmy and Libby money after the escape, and that he had known their location but had not disclosed it to law enforcement officers. The court instructed the jurors that these acts, standing alone, could not constitute the crime of harboring and concealing. The jury found Jack Smithers and Cathy Curry guilty on Counts 1 and 3. Jack received an 18 month prison sentence. This appeal followed.

II.

---

[1] 18 U.S.C. § 371.

[2] 18 U.S.C. § 751.

[3] 18 U.S.C. § 752(a).

[4] 18 U.S.C. § 1072.

3

Smithers argues that the trial court erred by not instructing that the crime of aiding an escape ends once immediate active pursuit of the escapee ends,[5] citing the Ninth Circuit case of United States v. Vowiell.[6]  He contends that the jury could have based his conviction on events after his brother eluded pursuit in Texas.  The government counters that Vowiell conflicts with United States v. Bailey,[7] in which the Supreme Court held that the crime of escape is a continuing crime.[8]  Because escape is a continuing crime, argues the government, any aid to a known fugitive is criminal as well.

Smithers has the stronger position.  The predecessor of the current statute defined both the offense of assisting escape and the offense of harboring and concealing a fugitive.[9]  Cases

---

[5]The requested instruction said: "The crime of aiding an escape terminates once the escapee has reached temporary safety. When physical control over the escape has ended by flight beyond immediate active pursuit, the escape is complete.  After that point in time, aid to the fugitive is no longer aiding the escape, although it may be evidence of harboring and concealing."

[6]869 F.2d 1264 (9th Cir. 1989).

[7]100 S. Ct. 624 (1980).

[8]Id. at 636.

[9]The statute provided:

Whoever shall rescue or attempt to rescue, from the custody of any officer or person lawfully assisting him, any person arrested upon a warrant or other process issued under the provisions of any law of the United states, or shall, directly or indirectly, aid, abet, or assist any person so arrested to escape from the custody of such officer or other person, or shall harbor or conceal any person for whose arrest a warrant or process has been so issued, so as to prevent his discovery and arrest, after notice or knowledge of the fact that a

4

interpreting that statute distinguished the levels of culpability required by its different clauses, noting that the statute made "any degree of assistance . . . criminal in the matter of aiding an escape, but when dealing with preventing detection of a fugitive, Congress used more limited language . . . ."[10] The move from assisting to harboring and concealing occurred when the escapee eluded immediate pursuit.[11]

Subsequent amendments[12] split that statute into two parts. The language about assisting escape moved to 18 U.S.C. § 752,[13] and the language about harboring and concealing moved to 18 U.S.C. § 1072.[14]

---

warrant or process has been issued for the apprehension of such person, shall be fined not more than $1,000, or imprisoned not more than six months, or both.

18 U.S.C. § 246 (1940 ed.).

[10]United States v. Shapiro, 113 F.2d 891, 893 (2d Cir. 1940).

[11]United States v. Orth, 252 F. 566, 568 (4th Cir. 1918). See also Shapiro, 113 F.2d at 893. See generally Wayne R. LaFave & Austin W. Scott, Jr., Criminal Law § 6.9(a) (2d ed. 1986) (discussing the development of the offense of "accessory after the fact").

[12]The Reviser's Notes for both section 752 and 1072 indicate that the new statutes "consolidate" provisions formerly codified in several places.

[13]The relevant provision reads: "Whoever rescues or attempts to rescue or instigates, aids or assists the escape, or attempt to escape, of any person . . . committed to the custody of the Attorney General or to any institution or facility by his direction, shall, if the custody or confinement is by virtue of . . . conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both . . . ."

[14]"Whoever willfully harbors or conceals any prisoner after his escape from the custody of the Attorney General or from a Federal penal or correctional institution, shall be imprisoned not more than three years."

5

Courts continued to recognize that acts such as failing to disclose a fugitive's location and giving small amounts of financial assistance to a fugitive do not constitute the crime of harboring and concealing.[15] Further, the new harboring and concealing statute requires that the act of harboring or concealing a fugitive occur "after his escape" from custody, underscoring the statement in earlier cases that harboring begins once immediate pursuit has ended.

United States v. Bailey does not undermine that distinction. Bailey and the cases it cites hold that a fugitive asserting a defense of duress or necessity cannot remain away once the events forcing his absence from custody end. For example, when a prisoner scales the wall because others forced him to do so, the offense of escape is committed when the duress has ended and the prisoner fails to return, even though it was not committed when the prisoner went over the wall.[16] In this practical sense the offense is said to be continuing. That construction of section 751, in the context of analyzing the defenses of duress and necessity, does not define the term "escape" in sections 752 and 1072. Applying it to those statutes would read section 1072 out of existence, because it would then be impossible to harbor a fugitive "after his escape."[17]

---

[15]See, e.g., United States v. Stacey, 896 F.2d 75, 77 (5th Cir. 1990) (citing United States v. Magness, 456 F.2d 976, 978 (9th Cir. 1972); United States v. Fox, 416 F.2d 940, 941 (7th Cir. 1969)).

[16]100 S.Ct. at 636.

[17]See State v. Martinez, 781 P.2d 306 (N.M. Ct. App. 1989) (distinguishing New Mexico harboring and concealing statute from the federal one because of this language in the federal statute).

The government points to the difficulty of determining when immediate active pursuit has ended.  But this determination is no more difficult than the fact-intensive inquiry <u>Bailey</u> requires as to when a defense of necessity or duress ceases to be good.[18]  This criticism is better directed to Congress.

III.

Because we find that the requested instruction was substantively correct, we next ask whether the charge given to the jury substantially covered the requested instruction, and whether failure to give the requested instruction seriously impaired Smithers' ability to present a given defense.[19]  Smithers contends that omitting the instruction kept him from defending himself by offering innocent explanations for his activity before the escape.

The government does not dispute that Smithers would have been prejudiced if he was unable to argue this defense.  Rather, the government contends that the charge substantially covered Smithers' requested instruction because it did not expressly allow the jury to convict for assisting escape on acts taken after immediate pursuit ended.  This argument fails because part of the definition of the crime of assisting escape is that it cannot occur after

---

[18]<u>See</u> <u>Bailey</u>, 100 S. Ct. at 635-36 (noting that an indispensable element" of a duress or necessity defense is proof of "a bona fide effort to return to custody as soon as the claimed duress or necessity has lost its coercive force").

[19]<u>United States v. Rubio</u>, 834 F.2d 442, 448-49 (5th Cir. 1987); <u>United States v. Grissom</u>, 645 F.2d 461, 464-65 (5th Cir. Unit A May 1981).

immediate pursuit ends.  An instruction need not affirmatively misstate an offense to be erroneous.

The dissent suggests that the charge obviated the need for Smithers' instruction because it required the jury to find that he "aided in the escape of Jimmy Arnold Smithers," and specified that his assistance took place "in or about August 1992 and continuing through at least on or about August 26, 1992."[23]  The words "in or about" and "at least on or about" imply that the assistance could have taken place at any time, and do not preclude the jury from finding that aid to the escape occurred after the escape took place.  Further, having the court specify the dates when assistance could occur invades the province of the jury by taking from it the fact-intensive question of when an escape ends.

In a similar vein, the government contends that the closing arguments about the charge advanced Smithers' interpretation of the law.  Closing argument is part of the totality of circumstances considered in deciding if an omitted instruction has substantially impaired a defendant's ability to advance a particular defense.[24] The arguments in this case, however, do not compensate for the lack of instruction.[25]  The prosecution never addressed the issue except to make a cryptic reference to "assistance pre-escape," which did not foreclose the jury from finding that assistance also took place

---

[23]The charge is reproduced in footnote 2 of the dissent.

[24]Rubio, 834 F.2d at 449.

[25]See United States v. Stowell, 953 F.2d 188, 189 (5th Cir. 1992); United States v. Burroughs, 876 F.2d 366, 369 (5th Cir. 1989).

8

post-escape. Smithers' lawyer briefly summarized his theory and then, acknowledging that it was "rather technical," told the jury that it might "have to read the charge again and study it some more." The charge, of course, made no reference to his theory. Curry's lawyer explained the same theory by urging that "everything but harboring and concealing was over after August 26 according to the government's indictment" when the indictment did not draw such a conclusion. We view this somewhat confused argument as being caused by, rather than filling, a gap in the charge.

The government also contends that an erroneous instruction on an element of an offense can be harmless beyond a reasonable doubt, if, given the factual circumstances of the case, the jury could not have found the defendant guilty without making the proper factual finding as to that element.[26] That rule does not apply to the verdict form used in this case, because we cannot tell from the jury's answers how it evaluated the evidence about Smithers' actions before the escape.[27]

The flaw with this conviction also undermines the conspiracy conviction. The general verdict form allowed conviction for conspiracy to commit any one of several offenses. The jury did not have proper guidance as to one.[28] We thus reverse the conspiracy

[26]United States v. Saks, 964 F.2d 1514, 1521 (5th Cir. 1992).

[27]See Burroughs, 876 F.2d at 370. See also United States v. Marcello, 876 F.2d 1147, 1153 (5th Cir. 1989).

[28]See Griffin v. United States, 112 S. Ct. 466, 474 (1991) (noting that "legal error" includes the situation where "a particular theory of conviction . . . fails to come within the statutory definition of the crime").

9

conviction because it rested on legally insufficient grounds.[29]

       REVERSED AND REMANDED FOR A NEW TRIAL.

---

[29]<u>Yates v. United States</u>, 354 U.S. 298, 312 (1957).

10

EMILIO M. GARZA, Circuit Judge, dissenting:

The issue before us is whether the district court abused its discretion in failing to submit Smithers' proposed instruction.[30] Both the proposed instruction and the instruction which was given[31]

---

[30]     Smithers requested the following jury instruction:

The crime of aiding an escape terminates *once the escapee has reached temporary safety*.  When physical control over the escapee has ended by flight *beyond immediate active pursuit*, the escape is complete.  After that point in time, aid to the fugitive is no longer aiding the escape, although it may be evidence of harboring and concealing.

[31]     The trial court submitted in pertinent part the following jury instructions:

To assist you in determining whether there was a conspiracy to (1) effect the escape of Jimmy Arnold Smithers from the Federal Correctional Institution at Seagoville, Texas; (2) instigate, aid, and *assist*, and attempt to instigate, aid, and assist, and attempt to instigate, aid and assist, *the escape* of Jimmy Arnold Smithers; and (3) willfully harbor and conceal prisoner Jimmy Arnold Smithers *after his escape* from the custody of a federal correctional institution, I will now explain to you the elements of these object offenses. . . .   The second object of the conspiracy charged in count 1 is instigating, aiding, and assisting escape, or attempting to do so.  The elements of this crime are set out in instructions in count 3 below. . . .   The third object of the conspiracy charged in count 1 is willfully harboring and concealing.  The elements of this crime are:

> First:  That one or more persons harbored and concealed Jimmy Arnold Smithers *after his escape* from the custody of the Federal Correctional Institution at Seagoville, Texas, as charged in the indictment; and
>
> Second:  That Jimmy Arnold Smithers was in federal custody and departed from the Federal Correctional Institution at Seagoville, Texas without permission.

The term "harbor" commonly means to give refuge to, shelter, lodge, care for, or protect.  The term "conceal" commonly means to hide; secrete; or keep out of sight, discovery, or knowledge.  The term "custody" means the detention of an individual by virtue of lawful process or authority.

Under these definitions, to "harbor" or "conceal" requires some affirmative act of providing aid to a prisoner to avoid detection or apprehension.  *Thus, failure to disclose a prisoner's location or*

11

state that at some point an escape ends.[3]  Thus, the issue is not

_____

*giving financial assistance to an escaped prisoner could not, standing alone, constitute harboring or concealing.*

<u>The Charge in Count 3 of the Indictment</u>
(Instigating, Aiding and Assisting Escape)

Count 3 of the indictment charges that in or about August 1992 and continuing through at least on or about August 26, 1992, in the Dallas Division of the Northern District of Texas and elsewhere, defendants Lizbeth Shull Smithers and Dillard Jack Smithers, Jr., aided and abetted by each other and by others, knowingly and willfully aided and assisted *in the escape* of Jimmy Arnold Smithers from Seagoville Federal Correctional Institution, Seagoville, Texas, after he had been committed to the custody of that institution by direction of the Attorney General, in violation of Title 18, United States Code, Sections 752(a) and 2.

Title 18, United States Code, Section 752(a) provides in pertinent part:

> Whoever . . . instigates, aids or *assists the escape* . . . of any person . . . committed to the custody of the Attorney General or to any institution or facility by his direction, shall, if the custody or confinement is by virtue of . . . [a] conviction of any offense, be [guilty of an offense against the United States].

Thus, § 752(a) makes it a crime for any person to instigate, aid or assist *in the escape* of any person who is in federal custody.  For you to find defendant Dillard Jack Smithers, Jr. guilty of the crime of aiding and assisting an escape, you must be convinced that the government has proven each of the following four elements beyond a reasonable doubt:

> <u>First</u>:  that defendant Jimmy Arnold Smithers was in federal custody;
>
> <u>Second</u>:  that defendant Jimmy Arnold Smithers was in such custody at an institution or facility where he was confined by the direction of the Attorney General for conviction of an offense;
>
> <u>Third</u>:  that defendant Dillard Jack Smithers, Jr. instigated, aided or assisted *in the escape* of Jimmy Arnold Smithers; and
>
> <u>Fourth</u>:  that defendant Jimmy Arnold Smithers knew he did not have permission to leave federal custody.

The term "custody" means the detention of an individual by virtue of lawful process or authority.

Also, in your consideration of count 3, the defendant Dillard Jack Smithers, Jr. may be found guilty if you find beyond a reasonable doubt that he committed the offense himself or caused its commission through or with others (see instructions on aiding and abetting below) (emphasis added).

12

the continuity of the escape,[4] but the more troublesome question))at what point does an escape end.  The majority opinion concludes that the tension between 18 U.S.C. § 752(a) (assisting an escape) and 18 U.S.C. § 1072 (harboring or concealing a fugitive) requires an additional instruction to the jury))that an escape ends when the escapee reaches "temporary safety" *that is*,[5] at the completion of "immediate active pursuit."[6]  I disagree.

"Smithers argues that the trial court erred by not instructing that the crime of aiding an escape ends once immediate active

---

[3]     The district court instructed the jury that in order to convict Jack Smithers of Count 1 (third object of the conspiracy, harboring and concealing) it had to find "[t]hat one or more persons harbored and concealed Jimmy Smithers *after* the escape . . . ."  *See supra* note 2; *see also* 18 U.S.C. § 1072 ("Whoever willfully harbors or conceals any prisoner *after his escape* from the custody of the Attorney General or from a Federal penal or correctional institution, . . . .") (emphasis added).  In contrast, the district court instructed the jury that in order to convict Jack Smithers of Counts 1 (second object of the conspiracy, assisting an escape) and 3 (assisting an escape), it had to find, beyond a reasonable doubt, he "instigated, aided or assisted *in the escape* of Jimmy Arnold Smithers."  *See supra* note 2 (emphasis added).

[4]     I agree with the majority, that from the prospective of one who assists or harbors an escapee, that "*United States v. Bailey* does not undermine" the distinction that harboring occurs "after the escape."  *See* slip op. at 6; *United States v. Bailey*, 444 U.S. 394, 413 (1980) ("[W]e think it clear beyond peradventure that escape from federal custody as defined in § 751(a) is a continuing offense and that an escapee can be held liable for failure to return to custody as well as for his initial departure."); slip op. at 6 ("In this practical sense the offense [under 18 U.S.C. § 751(a) (escape)] is said to be continuing.").

[5]     I question whether instructing a jury that "an escape terminates once the escapee has reached temporary safety" is factually equivalent to instructing it that the escape is complete "when physical control over the escapee has ended by flight beyond immediate active pursuit."  *But see infra* note 6.  The former focuses on the escapee (reaching temporary safety); while the latter, on the pursuer (immediate active pursuit).  The purposed instruction is confusing at best.

[6]     *See United States v. Vowiell*, 869 F.2d 1264, 1268 (9th Cir. 1989) ("The crime of aiding an escape terminates once the escapee has reached temporary safety:  `When the physical control has ended by flight beyond immediate active pursuit the escape is complete.  After that aid to the fugitive is no longer aiding his escape.'") (*quoting Orth v. United States*, 252 F. 566, 568 (4th Cir. 1918) (citations omitted)).  *But see supra* note 5 (Is reaching "temporary safety" factually equivalent to the completion of "immediate active pursuit"?).

13

pursuit of the escapee ends, . . . ." Slip op. at 3-4. Thus, "[h]e contends that the jury could have based his conviction on events [which occurred in late October and November 1992][7] after his brother eluded pursuit in Texas." *Id.* at 4. In his brief, Smithers states:

> During closing argument, Dillard Jack Smithers' counsel conceded that his client sent Jimmy and Libby Smithers money, and failed to disclose their location to law enforcement. The trial court instructed the jurors that these acts, standing alone, could not constitute harboring and concealing an escapee. However, *in order that the jury not erroneously conclude that these acts constitute aiding the escape*, Dillard Jack Smithers requested that the trial court instruct the jurors that the crime of aiding an escape terminates once the escapee has reached a point of temporary safety.[8]

Appellant's Brief at 8 (citations omitted). Accordingly, the operative instruction which we must examine is not the instruction on the third object of the conspiracy))harboring and concealing "after his escape"))but rather, the second object))assisting "in the escape."[9] *See supra* note 2.

Important to this analysis is that the district court correctly instructed the jury on the charges contained in Counts 1 (second object of the conspiracy) and 3 of the indictment and

_____

[7] *See* Record on Appeal vol. 6, at 38-39, 120-21.

[8] Thus, Smithers concedes, to the extent there is any evidence of harboring and concealing an escapee, the trial court's instruction to the jury))that "failure to disclose a prisoner's location or giving financial assistance to an escaped prisoner could not, standing alone, constitute harboring or concealing")) correctly limited the jury's consideration on that object of the conspiracy. *See supra* note 2.

[9] Furthermore, since the first object of the conspiracy))escape))was directed at the acts of Jimmy Smithers, *see* Record on Appeal Vol. 2, at 379-80, the only object of the conspiracy on which Jack Smithers could have been convicted, given his concession on harboring and concealing, is the second object))assisting Jimmy's escape.

limited the jury's considerations to events occurring "in or about August 1992 and continuing through at least on or about[10] August 26, 1992", the date of Jimmy's escape.[11] *See id.* Moreover, all of the parties understood the court's instruction to limit the evidence to events on or before August 26 and argued that understanding to the jury.[12]

Secondly, the trial court instructed the jury that it must find, beyond a reasonable doubt, "that defendant Dillard Jack Smithers, Jr. instigated, aided or assisted *in the escape* of Jimmy Arnold Smithers." *See id.* Thus, to the extent that Smithers contends "[t]he jury may nevertheless have concluded that there was

---

[10]    The district court further instructed the jury:

You will note that the indictment charges that the offenses were committed `on or about' certain dates. The proof need not establish with certainty the exact date of an alleged offense. It is sufficient if the evidence in the case establishes beyond a reasonable doubt that an offense was committed on a date reasonably near the date alleged.

*See id.* at 371.

[11]    I disagree with the majority's view that events occurring in late October and November 1992 are reasonably near "at least on or about August 26, 1992". *See also infra* note 12 and accompanying text.

[12]    *See* Record on Appeal vol. 8, at 49 (Smithers' attorney stated in closing argument:  "Assisting the escape means assisting the escape from the institution. Don't confuse that with harboring and concealing. The bottom line I submit is that you should only convict Smithers if you believe that he knew about it in advance, the escape in advance or assisted it in advance or according to an instruction you will find in the conspiracy charge if he joined a conspiracy with full knowledge of its scope and all of that was done in furtherance of the conspiracy.")*; id.* at 62-63 (Curry's attorney stated: "And everything but harboring and concealing was over after August 26 according to the government's indictment. The escape was on the 26th. All over after the 26th except the harboring and concealing.")*; id.* at 71 (The prosecutor argued:  "Been a lot of language about Jimmy Smithers leaving the federal penitentiary at Seagoville. He escaped. He escaped with the assistance of these two defendants. And the assistance pre-escape, here is some of the items. . . . The liquidation, the loading of the blue van, the visitation, the chicken scratch map, the blue van again because it mysteriously appears back at Papa Bear's, the telephone calls, look at those telephone bills, at the patterns that they present to you.").

sufficient evidence that he conspired to aid the escape by improperly considering evidence of assistance rendered after the escapee reached a point of temporary safety," Appellant's Brief at 14, the trial court correctly limited the jury's consideration to those events surrounding Jimmy's escape on or about August 26.[13]

Moreover, Smithers concedes "[arguing] in his closing statement that the jury should only find that he aided the escape if he rendered assistance to the escapee prior to the escape," although he maintains that "without the requested instruction the jury was free to disregard [this argument]." Appellant's Reply Brief at 4 (citation omitted). Given the instruction which the trial court gave on assisting the escape, the jury was not free "to disregard" Smithers' argument.

I also disagree that Smithers' proposed instruction, *see supra* note 1, is a correct statement of the law. This added definition has no statutory or legislative history support and very little common law support.[14] Had Congress desired to define that exact

---

[13] To the extent, however, that Smithers argues that evidence that he "sent Jimmy . . . money, and failed to disclose [his] location" is irrelevant to the conspiracy or substantive count of assisting the escape, he is mistaken: This evidence is, at least, relevant to prove "motive, . . . intent, plan, knowledge, . . . , or absence of mistake or accident." *See* Fed. R. Evid. 404(b).

[14] *Orth* cites "2 Wharton, Cr. L. 2606; 1 Russell on Crimes, 467; 10 R.C.L. 579; *Smith v. State*, 8 Ga. App. 297, 68 S.E. 1071; *State v. Ritchie*, 107 N.C. 857, 12 S.E. 251," *Orth*, 252 F. at 568, while *Vowiell* cites, "*Orth v. United States*, 252 F. 566, 568 (4th Cir. 1918); *see* Wharton's *Criminal Law and Procedure* § 1370 (1957) (assistance after completion of escape makes one guilty as an accessory after the fact and not as a party to the offense of escape); 4 Wharton's *Criminal Law* §§ 664-665 (1981) (emphasizing departure, rather than absence, from legal custody as hallmark of escape and prison breach); *see also United States v. Randolph*, 261 F.2d 234, 237 (7th Cir. 1958) (distinguishing aiding an escape from post-escape concealment under Illinois law)." *Vowiell*, 869 F.2d at 1268. None of the cited authority supports the conclusion that Congress intended to define "after the escape" in this manner.

16

point when an escape ends, it clearly knew how to do so:  The majority demands more precision than the applicable statute requires.  Furthermore, the language of the proposed instruction is, at best, confusing.  *See supra* note 5.  Accordingly, the district court did not abuse its discretion by not submitting Smithers' proposed instruction.[15]

Respectfully, I dissent.

---

[15]  *See United States v. Chaney*, 964 F.2d 437, 447 (5th Cir. 1992) (stating that in deciding whether the district court abused its discretion by not giving a requested instruction, we must determine whether the requested instruction:  (1) is a correct statement of the law; (2) was substantially given in the charge as a whole; and (3) concerns an important point in the trial, the omission of which seriously impaired the defendant's ability to present a given defense effectively).