PATRICK E. HIGGINBOTHAM, Circuit Judge:
We reverse Dillard Jack Smithers’ convictions for assisting and conspiring in his brother’s escape and remand for a new trial. We grapple with the concept that at some point an escape is complete and assisting the fleeing felon may constitute the crime of harboring a fugitive but not assisting the escape.
I.
Jimmy Smithers escaped from the Federal Correctional Institution in Seagoville, Texas. Despite the reality that for federal prisoners escape often may be little more than turning off the television and walking away, the crime remains that of escape. In April 1992, Jimmy Smithers’ wife, Libby, began liquidating her property and left her Texas home. While away, she executed a power of attorney authorizing Dillard Jack Smithers, Jimmy’s brother, to sell what remained. Jack sold almost everything in Libby’s house and sent her money from the sales.
On August 24,1992, Jack and Libby visited Jimmy at Seagoville. The next morning, Libby and her daughter went to the house of Cathy Curry, Jack’s longtime girlfriend, to pick up a flatbed truck belonging to Jimmy. Jack was there, although he usually worked *144 at that time, and backed the truck out for Libby. That evening, Jack and Curry went to the house where Libby was staying, where Jack helped load Libby’s suitcase and some tools into his van. Libby told her daughter that she was going on a canoe trip and then left in Jack’s van.
On August 26 Jimmy walked away from a work detail and drove away in a truck containing clothes and money. He soon left that truck and then, either in the flatbed truck or another vehicle, picked up Libby and drove north. In Oklahoma, they stopped to buy a travel trailer for $3,000 cash, and were seen driving his flatbed truck.
On December 15,1992, U.S. Marshals executed a search warrant on Curry’s house and recovered a receipt for an express mail package sent to “Libby Shull” in. Bonners Ferry, Idaho, a small town near the Canadian border. During questioning, Curry said that Jack told her she should not send anything else because that was “the quickest way for them to get caught.” The marshals also searched Jack’s home and found a sketch allegedly showing positions for Jimmy’s getaway vehicles.
U.S. Marshals captured Jimmy and Libby in Bonners Ferry on December 15,1992. In their trailer, marshals found money bands that had held cash. They also found a calendar and expense book indicating that Jack had sent the couple $200 after the escape.
Jack Smithers was charged in two counts of a four count indictment that also named Jimmy, Libby, and Curry. Count 1 charged Jack with conspiring[1] to commit the crimes of escape,[2] assisting an escape,[3] and harboring or concealing a fugitive.[4] Count 3 charged him with the substantive offense of assisting an escape. Jimmy and Libby pled guilty to the offenses for which they were charged, while Jack and Curry went to trial.
At trial, Jack conceded that he had sent Jimmy and Libby money after the escape, and that he had known their location but had not disclosed it to law enforcement officers. The court instructed the jurors that these acts, standing alone, could not constitute the crime of harboring and concealing. The jury found Jack Smithers and Cathy Curry guilty on Counts 1 and 3. Jack received an 18 month prison sentence. This appeal followed.
II.
Smithers argues that the trial court erred by not instructing that the crime of aiding an escape ends once immediate active pursuit of the escapee ends,[5] citing the Ninth Circuit case of United States v. Vowiell.[6] He contends that the jury could not have based his conviction on events after his brother eluded pursuit in Texas. The government counters that Vowiell conflicts with United States v. Bailey,[7] in which the Supreme Court held that the crime of escape is a continuing crime.[8] Because escape is a continuing crime, argues the government, any aid to a known fugitive is criminal as well.
Smithers has the stronger position. The predecessor of the current statute defined both the offense of assisting escape and the offense of harboring and concealing a fugitive.[9] Cases interpreting that statute distin *145 guished the levels of culpability required by its different clauses, noting that the statute made “any degree of assistance ... criminal in the matter of aiding an escape, but when dealing with preventing detection of a fugitive, Congress used more limited language....”[10] The move from assisting to harboring and concealing occurred when the escapee eluded immediate pursuit.[11]
Subsequent amendments[12] split that statute into two parts. The language about assisting escape moved to 18 U.S.C. § 752,[13] and the language about harboring and concealing moved to 18 U.S.C. § 1072.[14] Courts continued to recognize that acts such as failing to disclose a fugitive’s location and giving small amounts of financial assistance to a fugitive do not constitute the crime of harboring and concealing.[15] Further, the new harboring and concealing statute requires that the act of harboring or concealing a fugitive occur “after his escape” from custody, underscoring the statement in earlier eases that harboring begins once immediate pursuit has ended.
United States v. Bailey does not undermine that distinction. Bailey and the cases it cites hold that a fugitive asserting a defense of duress or necessity cannot remain away once the events forcing his absence from custody end. For example, when a prisoner scales the wall because others forced him to do so, the offense of escape is committed when the duress has ended and the prisoner fails to return, even though it was not committed when the prisoner went over the wall.[16] In this practical sense the offense is said to be continuing. That construction of section 751, in the context of analyzing the defenses of duress and necessity, does not define the term “escape” in sections 752 and 1072. Applying it to those statutes would read section 1072 out of existence, because it would then be impossible to harbor a fugitive “after his escape.”[17]
The government points to the difficulty of determining when immediate active pursuit has ended. But this determination is no more difficult than the fact-intensive inquiry Bailey requires as to when a defense of necessity or duress ceases to be good.[18] This criticism is better directed to Congress.
III.
Because we find that the requested instruction was substantively correct, we next ask whether the charge given to the jury *146 substantially covered the requested instruction, and whether failure to give the requested instruction seriously impaired Smithers’ ability to present a given defense.[19] Smith-ers contends that omitting the instruction kept him from defending himself by offering innocent explanations for his activity before the escape.
The government does not dispute that Smithers would have been prejudiced if he was unable to argue this defense. Rather, the government contends that the charge substantially covered Smithers’ requested instruction because it did not expressly allow the jury to convict for assisting escape on acts taken after immediate pursuit ended. This argument fails because part of the definition of the crime of assisting escape is that it cannot occur after immediate pursuit ends. An instruction need not affirmatively misstate an offense to be erroneous.
The dissent suggests that the charge obviated the need for Smithers’ instruction because it required the jury to find that he “aided in the escape of Jimmy Arnold Smith-ers,” and specified that his assistance took place “in or about August 1992 and continuing through at least on or about August 26, 1992.”[20] The words “in or about” and “at least on or about” imply that the assistance could have taken place at any time, and do not preclude the jury from finding that aid to the escape occurred after the escape took place. Further, having the court specify the dates when assistance could occur invades the province of the jury by taking from it the fact-intensive question of when an escape ends.
In a similar vein, the government contends that the closing arguments about the charge advanced Smithers’ interpretation of the law. Closing argument is part of the totality of circumstances considered in deciding if an omitted instruction has substantially impaired a defendant’s ability to advance a particular defense.[21] The arguments in this case, however, do not compensate for the lack of instruction.[22] The prosecution never addressed the issue except to make a cryptic reference to “assistance pre-escape,” which did not foreclose the jury from finding that assistance also took place post-escape. Smithers’ lawyer briefly summarized his theory and then, acknowledging that it was “rather technical,” told the jury that it might “have to read the charge again and study it some more.” The charge, of course, made no reference to his theory. Curry’s lawyer explained the same theory by urging that “everything but harboring and concealing was over after August 26 according to the government’s indictment” when the indictment did not draw such a conclusion. We view this somewhat confused argument as being caused by, rather than filling, a gap in the charge.
The government also contends that an erroneous instruction on an element of an offense can be harmless beyond a reasonable doubt, if, given the factual circumstances of the case, the jury could not have found the defendant guilty without making the proper factual finding as to that element.[23] That rule does not apply to the verdict form used in this case, because we cannot tell from the jury’s answers how it evaluated the evidence about Smithers’ actions before the escape.[24]
The flaw with this conviction also undermines the conspiracy conviction. The general verdict form allowed conviction for conspiracy to commit any one of several offenses. The jury did not have proper guidance as to one.[25] We thus reverse the con- *147 spiraey conviction because it rested on legally insufficient grounds.[26]
REVERSED AND REMANDED FOR A NEW TRIAL.

. 18 u.s.c. § 371.

. 18 U.S.C. § 751.

. 18 U.S.C. § 752(a).

. 18 U.S.C. § 1072.

. The requested instruction said: "The crime of aiding an escape terminates once the escapee has reached temporary safety. When physical control over the escape has ended by flight beyond immediate active pursuit, the escape is complete. After that point in time, aid to the fugitive is no longer aiding the escape, although it may be evidence of harboring and concealing.”

. 869 F.2d 1264 (9th Cir.1989).

. 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980).

. Id. 444 U.S. at 413, 100 S.Ct. at 636.

. The statute provided:
Whoever shall rescue or attempt to rescue, from the custody of any officer or person lawfully assisting him, any person arrested upon a warrant or other process issued under the provisions of any law of the United states, or shall, directly or indirectly, aid, abet, or assist any person so arrested to escape from the custody of such officer or other person, or shall harbor or conceal any person for whose arrest a warrant or process has been so issued, so as to
*145 prevent his discovery and arrest, after notice or knowledge of the fact that a warrant or process has been issued for the apprehension of such person, shall be fined not more than $1,000, or imprisoned not more than six months, or both.
18 U.S.C. § 246 (1940 ed.).

. United States v. Shapiro, 113 F.2d 891, 893 (2d Cir.1940).

. Orth v. United States, 252 F. 566, 568 (4th Cir.1918). See also Shapiro, 113 F.2d at 893. See generally Wayne R. LaFave & Austin W. Scott, Jr., Criminal Law § 6.9(a) (2d ed. 1986) (discussing the development of the offense of "accessory after the fact”).

. The Reviser's Notes for both section 752 and 1072 indicate that the new statutes “consolidate” provisions formerly codified in several places.

. The relevant provision reads: “Whoever rescues or attempts to rescue or instigates, aids or assists the escape, or attempt to escape, of any person ... committed to the custody of the Attorney General or to any institution or facility by his direction, shall, if the custody or confinement is by virtue of ... conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both....”

. "Whoever willfully harbors or conceals any prisoner after his escape from the custody of the Attorney General or from a Federal penal or correctional institution, shall be imprisoned not more than three years." 15. See, e.g., United States v. Stacey, 896 F.2d 75, 77 (5th Cir.1990) (citing United States v. Magness, 456 F.2d 976, 978 (9th Cir.1972); United States v. Foy, 416 F.2d 940, 941 (7th Cir.1969)).

. 444 U.S. at 413, 100 S.Ct. at 636.

. See State v. Martinez, 109 N.M. 34, 781 P.2d 306 (Ct.App.1989) (distinguishing New Mexico harboring and concealing statute from the federal one because of this language in the federal statute).

. See Bailey, 444 U.S. at 410-13, 100 S.Ct. at 635-36 (noting that an "indispensable element” of a duress or necessity defense is proof of “a bona fide effort to return to custody as soon as the claimed duress or necessity has lost its coercive force”).

. United States v. Rubio, 834 F.2d 442, 448-49 (5th Cir.1987); United States v. Grissom, 645 F.2d 461, 464-65 (5th Cir. Unit A May 1981).

. The charge is reproduced in footnote 2 of the dissent.

. Rubio, 834 F.2d at 449.

. See United States v. Stowell, 953 F,2d 188, 189 (5th Cir.1992); United States v. Burroughs, 876 F.2d 366, 369 (5th Cir.1989).

. United States v. Saks, 964 F.2d 1514, 1521 (5th Cir.1992).

. See Burroughs, 876 F.2d at 370. See also United States v. Marcello, 876 F.2d 1147, 1153 (5th Cir.1989).

. See Griffin v. United States, — U.S. -, -, 112 S.Ct. 466, 474, 116 L.Ed.2d 371 (1991) (noting that "legal error” includes the situation where "a particular theory of conviction ... fails *147 to come within the statutory definition of the crime").

. Yates v. United States, 354 U.S. 298, 312, 77 S.Ct. 1064, 1073, 1 L.Ed.2d 1356 (1957).

. See United States v. Chaney, 964 F.2d 437, 447 (5th Cir.1992) (stating that in deciding whether the district court abused its discretion by not giving a requested instruction, we must determine whether the requested instruction: (1) is a correct statement of the law; (2) was substantially given in the charge as a whole; and (3) concerns an important point in the trial, the omission of which seriously impaired the defendant's ability to present a given defense effectively).