STEPHEN A. HIGGINSON, Circuit Judge:
Appellant-Defendant Kenneth Fairley appeals his jury conviction for theft of *202 government property in violation of 18 U.S.C. § 641 (counts two and three) and conspiracy to commit theft of government property in violation of 18 U.S.C. § 371 (count one). Fairley argues that: (1) the indictment, jury instruction, and verdict form all misstated the elements of § 641; (2) the district court erroneously admitted recorded conversations as non-hearsay statements of a coconspirator; and (8) the district court improperly calculated Fair-ley’s loss amount and’ imposed an inapplicable sentencing enhancement. Because errors in the indictment, jury instruction, and verdict form directly undermined Fairley’s defense, we VACATE Fairley’s conviction under counts two and 'three. We AFFIRM Fairley’s conviction under count one, and the district • court’s evidentiary and sentencing rulings. We REMAND to the district court to determine. whether Fairley’s sentence should change in light of the vacated convictions.[1]

I.
After a six-day trial, a jury found Kenneth Fairley guilty of two counts of theft of government funds and one count of conspiracy to commit theft of government funds. The charges arose from a conspiracy between Fairley and another man, Arthur Fletcher, to submit inflated construction bills to a United States government-backed. affordable housing program. Fair-ley was sentenced to 36 months imprisonment, concurrent as to all three counts.[2]

i. The HUD Grant

The United States Department of Housing and Urban Development (HUD).operates the HOME investment program, which aims to increase availability of affordable housing. Through the HOME program, HUD partners with “participating jurisdictions,” which in turn certify nonprofit Community Housing Development Organizations (CHDOs). Certified CHDOs are eligible to receive HUD grants for construction and renovation of affordable housing units. ‘
Fairley served as executive director of Pinebelt Community Services, Inc., a nonprofit organization. In March 2010, the city of Hattiesburg, Mississippi, a HUD participating jurisdiction,'designated Pinebelt as an approved CHDO. In August 2010, Hat-tiesburg and Pinebelt entered into a contract under which Pinebelt agreed to develop three low-income housing units, and Hattiesburg agreed to reimburse Pinebelt with Up to $100,000 of HOME program funds. The agreement also provided for Pinebelt to receive up to $18,637.60 in operating funds in addition to the HOME funds. The parties later amended the contract, and- agreed that Pinebelt would instead renovate two > single' family homes: 202 South Street and 127 East 5th Street.
In July and August 2011, Pinebelt submitted two “request[s] for funds” to Hat-tiesburg totaling $98,000. The requests were signed by Fairley, and ostensibly sought reimbursement for “services rendered and allowable costs/expenditures” associated with rehabilitating the South Street and 5th Street homes. After receiving the requests, Hattiesburg paid Pine-belt $98,000.
ii. The Government’s Case

At trial the government presented evidence that Fairley conspired with his old *203 friend Fletcher to defraud the government.[3] Fletcher owned. Interurban Housing and Development LLC, To apply for and receive HOME funds from Hatties-burg, Pinebelt submitted documents suggesting that it ,had. solicited bids for the contract, selected Interurban as a contractor after a competitive bidding process, and Interurban billed Pinebelt for $98,000 in construction costs at the two properties. According to the government, these documents were false, and Interurban did no work.on the properties. Nonetheless, the government investigation showed that Pi-nebelt sent $72,000 to Interurban after receiving the $98,000 from the city.
. An agent with the Office of the Inspector General testified that Fairley admitted to him that Interurban did no work on, the South Street and 5th Street properties. The same agent testified that Fletcher admitted that Interurban did not work on the Pinebelt projects, but that Fletcher had allowed Fairley to use Interurban’s name to qualify for HUD grants.
An IRS agent testified that a review of Pinebelt’s finances showed that Pinebelt spent only approximately $88,000 renovating the two properties. The agent also documented several transfers, described as “seed money” necessary to secure the contract with Hattiesburg, from a' charity controlled by Fletcher to Pinebelt.[4] The government presented evidence that the rehabilitation work on the properties was shoddy, and the properties did not pass inspection until years after Pinebelt was paid. Finally, the. government played recorded phone calls between Fairley and Fletcher. In the calls, Fletcher attempted to collect money from Fairley, apparently provided to secure a second HUD contract with Hattiesburg.
iii. Fairley’s Gase

In his defense, Fairley disputed the government’s, contention that Interurban did no work, and described the transfers from Fletcher’s charity as loans and donations. Fairley also challenged the government’s interpretation of HOME program regulations and the government’s accounting. A HUD consultant called by Fairley testified that CHDOs may properly be reimbursed under HOME for operating expenses, including salaries. Fairley showed that, although HUD did investigate and suspend Pinebelt, the investigation found Pinebelt and Hattiesburg’s documentation to be “satisfactory” and HUD eventually lifted Pinebelt’s suspension.
Fairley also called an accountant and former IRS agent who testified that Pine-belt spent—including overhead costs—approximately $185,000 rehabilitating the South Street and 5th Street properties between August 2010 and August 2011. In addition, a construction contractor-‘called by Fairley estimated that the value of Pinebelt’s work on the two properties totaled approximately $149,000. Finally, Fairley elicited testimony that at least ten different contractors and between 15 and 20 volunteers worked on the two projects, and that Interurban had, .in fact, worked on the projects.
iv. The Verdict

The jury found Fairley guilty on all three counts. The verdict form read as follows: .

*204 1. On Count 1 of the Indictment, conspiracy to commit theft in violation of 18 U.S.C. § 371, we, the jury, find the Defendant Kenneth E. Fairley, Sr.:
_ Guilty _ Not Guilty
2. On Count 2 of the Indictment, knowingly and willfully receiving, retaining, concealing, or converting any money, property, or thing of value belonging to the United States having an aggregate value of more than $1,000 in violation of 18 U.S.C. § 641, we, the jury, find the Defendant Kenneth E. Fairley, Sr.:
_ Guilty _ Not Guilty
3. On Count 3 of the Indictment, knowingly and willfully receiving, retaining, concealing, or converting any money, property, or thing of value belonging to the United States having an aggregate. value of more than $1,000 in violation of 18 U.S.C. § 641, we, the jury, find the Defendant Kenneth E. Fairley, Sr.:
_ Guilty _ Not Guilty
The jury placed an “X” next to “Guilty” for all three counts. For counts two and three, the jury crossed out “retaining” and “concealing” on the verdict form, leaving only “receiving” and “converting” as the operative verbs. When the verdict was read aloud by the district court’s clerk, the clerk omitted the crossed out words.[5] Fair-ley did not object.
II.
Count one of the indictment charged Fairley with conspiracy to commit theft of government property in violation of 18 U.S.C. § 371. Counts two and three charged Fairley with theft of government property in violation of 18 U.S.C. § 641. Fairley argues that- the indictment, jury instruction, and verdict form all misstated the elements of § 641. Fairley asserts that: (1) the indictment was legally insufficient as to counts two and three, (2) the jury instructions permitted the jury to convict Fairley of a nonexistent offense under counts two and three, and (3) the errors in counts two and three invalidate his conspiracy conviction under count one. We begin: by discussing the structure of § 641, and then evaluate Fairley’s claims of error.
i. 18 U.S.C. § 6U "
Title 18, United States ■ Code, Section 641 criminalizes two distinct acts. The first paragraph of § 641 makes- it a crime to:
(1) “embezzle[ ], steal[], purloin[], or knowingly convert[ ] to [the defendant’s] own use or the use of another”;
(2) “a thing of value of the United States.”
18 U.S.C. § 641. Under the second paragraph of § 641, it is a crime to:
(1) “receive[ ], conceal[ ], or retain[ ]”;
(2) a thing of value of the United States;
(3) “with the intent to convert it to [the defendant’s] use or gain”;
(4) “knowing it to have been embezzled, stolen,-purloined or converted.”

Id. In short, paragraph one covers stealing from the United States and paragraph two covers knowingly receiving stolen United States property. See Milanovich v. United States, 365 U.S. 551, 554, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961) (discussing § 641 and distinguishing between “the provision of the statute which makes receiving an offense” and “the provision relating to rob *205 bery”); United States v. Minchew, 417 F.2d 218, 219 (5th Cir. 1969) (per curiam) (“The Court [in Milanovich] apparently concluded that Congress, by adding paragraph two to section 641 intended to reach a new group of wrongdoers, and not to multiply the offense of the thieves themselves.”).
Even though § 641’s two paragraphs target separate acts, id.,[6] the Fifth Circuit’s pattern jury instruction for § 641 applies only to the first paragraph. Fifth Circuit Pattern Jury Instruction (Criminal Cases) § 2.27 (2015) (“Theft of Government Money or Property—18 U.S.C. § 641 (First Paragraph)”). The Ninth Circuit’s pattern instructions have separate entries, with different elements, for paragraphs one and two. Compare Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit § 8.39 (2010) (“Theft of Government Money or Property (18 U.S.C. § 641)”) -with ion index="16" url="https://cite.case.law/citations/?q=18%20U.S.C.%20%C2%A7%20641">id. § 8.40 (“Receiving Stolen Government Money or Property (18 U.S.C. § 641)”).
Further, the verbs animating § 641’s first two paragraphs are not fungible. The verbs in paragraph one—embezzle, steal, purloin, and convert—describe takings or possessions that are fraudulent or otherwise illegal. Paragraph two’s verbs—receive, conceal, and retain—are broader, and cover innocent as well as illicit acts.
The government disagrees. It argues that § 641 is divided into separate paragraphs merely for historical reasons, and that this distinction has,no bearing on this case. The government purports to cite authority in support, but its cases miss the mark. Some state generally that § 641 covers a broad range of conduct. See Morissette v. United States, 342 U.S. 246, 266 n.28, 271, 72 S.Ct. 240, 96 L.Ed. 288 (1952) (discussing § 641’s broad reach and stating that there is “considerable overlapping in the embezzlement, stealing, purloining and knotoing conversion grouped in this statute” (emphasis added)); United States v. Dowl, 619 F.3d 494, 501 (5th Cir. 2010) (per curiam) (noting § 641’s “broad construction”). Others address even more tangential issues. See United States v. Reagan, 596 F.3d 251, 253 (5th Cir. 2010) (“[E]ach distinct taking of funds constitutes a separate violation under the statute.”); United States v. Bailey, 734 F.2d 296, 304 (7th Cir. 1984) (describing § 641’s “purpose” as “to provide - a sanction for intentional conduct by which a person either misappropriates or obtains a wrongful advantage from government property”). And at least one undermines the government’s position'. See United States v. Bauer, 713 F.2d 71, 74 n.9 (4th Cir. 1983) (“[T]he Government may elect to charge, and obtain a conviction for, either theft or for receiving, concealing or retaining. That is to say that the crimes are not mutually exclusive.”).
In short, nothing cited by the government causes us to doubt what is clear from both the statutory text and prior cases: section 641’s first two paragraphs describe two distinct criminal acts, with distinct ele *206 ments. Fairley’s indictment, jury instructions, and • verdict form all, .in different ways, combined the first and second paragraphs of § 641 into a single purported offense. This erroneous cross-incorporation, and its effect on Fairley’s conviction, is discussed below.
ii. The Indictment

Fairley challenges counts two and three of the indictment as insufficient.[7] These counts charge that Fairley “did knowingly and willfully retain, conceal, and convert to his own use or the use of another money of the United States in an amount greater than $1,000.00.” In doing so, the indictment borrows the verbs “retain” and “conceal” from paragraph two of § 641, But the indictment omits paragraph two’s remaining elements; it -does not charge that Fairley acted: (1) “with the intent to convert” the United States’ money to “his own use or gain”; or (2) “knowing [the money] to have been embezzled, stolen, purloined, or converted.” 18 U.S.C. § 641. Fairley argues that by combining verbs from § 64'1’s theft prong and receiving prong, the indictment charged him with a nonexistent “hybrid offense” that does not encompass all elements of either criminal act.
" [1] Fairley concedes that he did not object to his indictment below, and we therefore review the indictment’s sufficiency for plain error. United States v. McGilberry, 480 F.3d 326, 328-29 (5th Cir. 2007). “This standard requires a showing. that there was (1) error, (2) that is plain, and (3) that affects substantial rights.” Id. (internal quotations omitted). Even when these prongs are met, “[t]his court retains discretion to correct reversible plain error and will do so ‘only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.’ ” United States v. Dominguez-Alvarado, 695 F.3d 324, 328 (5th. Cir. 2012) (quoting Puckett v. United States, 556 U.S. 129, 135, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009)).
“ ‘[T]he validity of an indictment is governed by practical; not technical considerations,’ and ‘[t]he basic purpose behind an indictment1 is to inform a defendant of the charge against him[.]’ ” United States v. Cooper, 714 F.3d 873, 877 (5th Cir. 2013) (second alteration in original) (quoting United States v. Ramos, 537 F.3d 439, 459 (5th Cir. 2008) and United States v. Hoover, 467 F.3d 496, 499 (5th Cir. 2006)). “An indictment is legally sufficient if (1) ‘each count contains the essentiál elements of the offense charged,’ (2) ‘the elements are described with particularity,’ and (3) ‘the charge is specific enough to protect the defendant against'a subsequent prosecution for the same offense.’ ” Id. (quoting United States v. Threadgill, 172 F.3d 357, 366. (5th Cir. 1999)). Fairley’s argument goes to the first of these three requirements.[8]

The Fifth Circuit’s pattern jury instruction for paragraph one of § 641 lists three elements:'

First: That the money [property] [thing of value] described in the i-ndictment belonged to the United States government and had a value in excess of $1,000 at the time alleged;

Second-, That the defendant embezzled [stole] [knowingly converted] such món- *207 ey [property] [thing of value] to the defendant’s own use [to the use of another]; and

Third: That the defendant did so knowing the money [property] [thing of value] was not his and with intent to deprive the owner of the use [benefit] of the money [property] [thing of value].
Fifth Circuit Pattern Jury Instruction (Criminal Cases) § 2.27 (2015) (brackets in original); see also United States v. Pruett, 681 F.3d 232, 247 (5th Cir. 2012) (per curiam) (approving instruction). Omitting the words “retain” and “conceal” from counts two and three of the' indictment shows that the remaining language largely tracks the first and second pattern elements: the indictment describes “money of the United States in an amount greater than $1,000.00” (first element), and charges that Fairley “did knowingly and willfully ... convert [it] to his own use or the use of another ...” (second element).[9]

Fairley cites nothing suggesting that inserting additional words to describe a defendant’s conduct may invalidate an otherwise competent indictment. See United States v. Valencia, 600 F.3d 389, 432 (5th Cir. 2010) (per curiam) (“We treat the allegation of additional facts beyond those which comprise the elements of the crime as ‘mere surplusage.’ ” (quoting United States v. Robinson, 974 F.2d 575, 578 (5th Cir. 1992))). The'indictment.icharges that Fairley “retain[ed], concealed], and converged]” government funds (emphasis added). Fairley did not object to his indictment, did not ask for a clarification, and does not argue that the superfluous verbs prejudiced his defense. Rather, at least according to Fairley, “the Government pursued a theory of ‘theft of Government property’ at trial, as opposed tó the knowing receipt of ‘stolen property/]” There is no indication Fairley expected anything else.
This court has often noted that the “minimal constitutional standards” that an indictment must meet “do ‘not compel a ritual of words.’ ” Ramos, 537 F.3d at 459 (quoting United States v. Crow, 164 F.3d 229, 235 (5th Cir. 1999)). Accordingly, “[a]n indictment need not precisely track statutory language.” Id. (rejecting challenge to indictment charging that defendant “discharged” a firearm when statute prohibited “use” of a firearm); Hoover, 467 F.3d at 500 (rejecting defendant’s “overly technical” argument “that the indictment failed to allege a false statement because ‘complained’ and ‘told’ are not synonymous terms”). Including two words from another offense-verbs that properly describe *208 Fairley’s alleged conduct, even if not an element of his offense—is not plain error.
iii. Jury Instructions

Fairley argues that, by conflating elements of § 641’s theft and receiving prongs, the jury instruction and verdict form incorrectly stated the law. A jury instruction must: (1) correctly state the law, (2) clearly instruct the jurors, and (3) be factually supportable. United States v. Phea, 755 F.3d 255, 266 (5th Cir. 2014). “[S]pecific jury instructions are to be judged not in isolation, ‘but must be considered in the context of the instructions as a whole and the trial record.’” Id. (quoting United States v. Simkanin, 420 F.3d 397, 406 (5th Cir. 2005)). Verdict forms are considered part of the jury instruction, and we evaluate the combined effect on the jury. See Jones v. United States, 527 U.S. 373, 393, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999) (“[A]lthough the verdict forms standing alone could have [confused the jury], any confusion created by the verdict forms was clarified when considered in light of the entire jury instruction.” (quoting United States v. Jones, 132 F.3d 232, 245 (5th Cir. 1998))); see also United States v. Cardinas Garcia, 596 F.3d 788, 799 (10th Cir. 2010) (“When reviewing a jury verdict form, we must determine whether it, along with the instructions read to the jury, as a whole adequately stated the applicable law.”).
Fairley did not object below, and we therefore review the instruction for plain error.[10] Jury instruction error “does not amount to plain error unless it could have meant the difference between acquittal and conviction.” United States v. McClatchy, 249 F.3d 348, 357 (5th Cir. 2001) (quotation marks omitted); see also Henderson v. Kibbe, 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977) (“It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.”). Still, “[w]hen a jury instruction omits or significantly misstates an essential element of an offense, the error may be severe enough to meet the plain-error standard.” United States v. Brown, 553 F.3d 768, 785 (5th Cir. 2008) (quoting United States v. Stone, 960 F.2d 426, 434 (5th Cir. 1992)).
The district court instructed the jury regarding count two as follows:
Count 2 of the indictment accuses defendant Kenneth E. Fairley, Sr. of violating Title 18 of the United States Code, Section 641, which makes it illegal to knowingly and willfully receive, retain, conceal or convert any money, property or thing of value belonging to the United States having an aggregate value of more than $1,000.
For you to find the defendant Kenneth Fairley guilty of this crime, you must-be convinced that the government has prov *209 en each of the ■ following beyond a 'reasonable doubt:
• First, that the money described in Count 2 of the indictment belonged to the United States and had a value in excess of $1,000 at the time alleged;
• [S]econd, that the defendant, Fairley, knowingly and willfully converted, received, retained, concealed or converted such money; and,
• [T]hird, that defendant Fairley did so with intent to convert said money to his use or the use of another (emphasis and bullets added).[11]

The court’s charge for count three did not materially differ. These instructions departed from the pattern language we have previously adopted for § 641’s “theft” paragraph in two ways. First, the district court’s instructions replaced some pattern verbs in the second element—embezzle, steal, and knowingly convert—with verbs drawn from § 641’s “receiving” paragraph—receive, retain, and conceal.[12] Second, the district court’s instructions replaced the third element, which covers knowledge and intent, with a requirement that Fairley acted with “intent to' convert,” apparently also drawn from § 641’s “receiving” paragraph.
In mixing the elements of “stealing” and “receiving,” the district court failed to adequately charge as to either. The instructions as given permitted the jury to convict upon finding that Fairley: (1) knowingly and willfully received United States money, (2) with intent to'convert it to his use. The first, “theft” paragraph of § 641 prohibits converting United States money, but says nothing about receiving -with intent to convert. And the second, “receiving” paragraph prohibits receiving with intent to convert, but only when the defendant acts “knowing [the money] to have been embezzled, stolen, purloined, or converted.” 18 U.S.C. § 641; Schaffer v. United States, 221 F.2d 17, 23 (5th Cir. 1955) (“To be guilty of [receiving, concealing, or retaining United States property under § 641], a defendant must himself have known that the property had been stolen.”).
The verdict form repeated the error. It states:
On Count 2[/3] of the Indictment, knowingly and willfully receiving, retaining, concealing, or converting any money, property, or thing of value belonging to the United States having an aggregate value of more than $1,000 in violation of 18 U.S.C. § 641, we, the jury, find the Defendant Kenneth E. Fairley, Sr.: *210 ■ __ ■ Guilty _ Not Guilty
(emphasis added).
Like the jury charge, the verdict form used verbs from § 641’s receiving paragraph, but omitted the requirement that the defendant knew the money had been embezzled, stolen, purloined,.or converted. But unlike the jury instruction, the verdict form made no mention of an intent to convert.
The district court’s erroneous jury instruction was plain' error. The failure to require proof of each element of conviction affected Fairley’s substantial rights. See United States v. Gaudin, 515 U.S. 506, 511, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995) (“The Constitution gives a criminal'defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged.”); see also United States v. Savoires, 430 F.3d 376, 380 (6th Cir. 2005) (mixing elements of 18 U.S.C. § 924 in jury instructions and indictment was plain error); United States v. Wilkins, 253 Fed.Appx. 538, 546-47 (6th Cir. 2007) (plain error where “the instructions mixed the elements of the use or carry [of a firearm under 18 U.S.C. § 924] offense'with those of the possession offense”). True, the jury instructions permitted conviction only upon a finding that Fairley acted with “intent to convert [government money] to his use.” And the resulting distinction—between knowingly converting money and receiving, retaining, or concealing money with intent to convert it—is slim. But Fairley built his defense in the space between receiving and converting.
Fairley did not dispute at trial that he received government funds. As his lawyer put it in closing: “Everybody agrees Pine-belt received the ninety-eight from the city. We agree on that. Got it in blue.” Rather, Fairley argued that, he properly spent HUD funds on renovating the two properties. He called several witnesses to support his theory' that Pinebelt spent more money renovating the two properties than it received from the government. Fairley also disputed the government’s interpretation of what expenses were properly reimbursable under the HOME Program. In short, Fairley sought to show that the government got the benefit it sought in exchange for its $98,000. Permitting the jury to convict on mere receipt with intent to convert therefore directly undermined Fairley’s defense theory.[13]

further, the effect of the jury instructions was compounded by errors in the verdict form and indictment. When it began deliberating, the jury had been provided three different recitations of the elements necessary to convict -under § 641— instruction, verdict form, and indictment. Each of: these differed from the others, and none correctly stated § 641’s elements. All included verbs from the receiving prong, but none included the requirement that the defendant act knowing the property in question has been embezzled, stolen, purloined, or converted. Only one of the three included the element of acting with intent to convert the property. ■
The impact of these errors was also amplified by the government’s argument to the jury. See United States v. Chagra, 807 F.2d 398, 402 (5th Cir. 1986) (“We review claimed deficiencies in a jury *211 charge by looking to the entire charge as well as the arguments made to the jury”). The government brought and tried this case under the mistaken belief that receiving, retaining, and concealing government property is prohibited by § 641 even absent knowledge that the property was embezzled, stolen, purloined, or converted.[14] In closing argument, it differentiated between '“theft of government money” as charged in count one, and the “receiving], retain[ing], concerting], or convert[ing]” offenses charged in counts two and three.
The government argues that these errors were cured by the jury’s uninvited modification of the jury form. As noted, the jury crossed out “retaining” and “concealing” on the verdict form, leaving only “receiving” and “converting” as the operative verbs in counts two and three. According to the government, by crossing out “retaining” and “concealing,” the jury indicated that they had unanimously found that Fairley both “received” and “converted” government money. This, to the government, cures any issue with the indictment or instructions, because knowing conversion is prohibited by paragraph one of § 641 and the term appears in the indictment, instruction, and verdict form.
The unprompted and unexplained verdict form modifications do not dissuade us in our discretion from finding plain error here. “Federal courts have long held that additional jury notations that are. not directly responsive to the jury charge and verdict form are surplusage, and are to be ignored.” Great Pines Water Co. v. Liqui-Box Corp., 203 F.3d 920, 924 (5th Cir. 2000); see also United States v. Ailsworth, 138 F.3d 843, 846 (10th Cir. 1998) (“Generally, unnecessary or irrelevant statements in a verdict form may be disregarded as surplusage.”). Applying this rule is particularly appropriate where,.as here, no inquiry was made by the district court concerning how or why the verdict form was modified. Although the verdict was read aloud by the district court’s clerk without the crossed out words, and the • district court generally polled the jury, the court did not ask who crossed out the form or how the decision to do so was made.[15]

The government’s argument that the cross-outs were, in fact, responsive to the jury charge is belied by the transcript. As noted,' the district court' explained at length that the jury did not need to find that Fairley received, retained, concealed, and converted; they could convict on a-unanimous finding that Fairley did any one of the four acts. The trial judge never told the jury to .indicate which of the four acts supported its verdict or to cross out verbs they did not find unanimously. Accordingly, affirming Fairley’s conviction *212 based on anything beyond the “X” next to “guilty” would give effect to “additional jury notations that are not directly responsive to the jury charge and verdict form.” Great Pines Water Co., 203 F.3d at 924.
In short, the elements of § 641 were confused by the government’s argument, the indictment, the jury instructions, and the verdict form. The combined error directly undermined Fairley’s defense theory and permitted the jury to convict for a non-offense. This error seriously affected the fairness and integrity of Fairley’s trial, and could have meant the difference between conviction and acquittal. We therefore vacate Fairley’s conviction under counts two and three.[16]

iv. Count One

Fairley was also convicted of count one, which charged that Fairley conspired to commit theft of government money in violation of § 641. Fairley argues that his conviction on this count must be vacated as well. Fairley points to no actual error in how count one was presented in the indictment, jury instructions, verdict form, or government’s argument. Nor could he: all were true to § 641’s theft prong. Rather, Fairley argues that because count one rested on the same substantive offense as counts two and three, misstatements of the elements supporting count two and three necessitate vacating count one.[17] We hold that count one was distinct from the substantive counts and the errors regarding counts two and three therefore do not extend to cause plain error in Fairley’s conspiracy conviction.
The district court instructed the jury that the first element of count one was “that the defendant and at least one other person made an agreement to commit the crime of theft of government money, as charged 'in the indictment” (emphasis added). The verdict form also described the offense as “theft” and referenced the indictment. Count one of the indictment charged that Fairley and Fletcher conspired to:
defraud the United States or commit offenses against the United States as follows:

Embezzle, steal, purloin, or knowingly convert to their use or the use of another any record, voucher, money, or thing of value of the United States or an agency thereof, in violation of Section 641, Title 18, United States Code (emphasis added).
Finally, as noted, the government’s closing argument distinguished between “theft of government money” as charged in count *213 one, and the “receiving], retaining], conceal[ing], or convert[ing]” offenses charged in counts two and three. These repeated instructions made clear to the jury that count one—unlike counts two and three— charged Fairley with conspiring to steal, rather than merely receive, government money.
Further, count one does not encompass the retention, concealment, and conversion of government money charged in counts two and three. Although count one describes the conduct that led to receiving the HUD grants underlying counts two and three, actual receipt of those funds is not listed as an overt act committed in furtherance of the conspiracy. The list of overt acts includes the “seed money” transfers from Fletcher to Fairley, Fair-ley’s submission of an engagement letter, and the later requests for funds. But it omits actual receipt.
Given this separation, and the high threshold of plain error review, Fairley’s conviction on count one stands.
III.
At trial, the government prominently featured tape recorded conversations between Fairley and Arthur Fletcher. The district court admitted Fletcher’s portion as non-hearsay statements by a coconspir-ator. Fairley’s objection was overruled, and he now appeals.
A statement is not hearsay if “[t]he statement is offered against an opposing party and ... was made by the party’s coconspirator during and in furtherance of the conspiracy.” Fed. R. Evid. 801(d)(2)(E). To introduce a statement under this rule, the proponent must show by a preponderance of the evidence: “(1) the existence of the conspiracy; (2) the statement was made by a co-conspirator of the party; (3) the statement was made during the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy.” United States v. Hall, 500 F.3d 439, 443 (5th Cir. 2007). The content of the challenged statement itself must be considered, but the proponent cannot establish admissibility based on the statement alone. United States v. Nelson, 732 F.3d 504, 516 (5th Cir. 2013). “There must be ‘independent evidence’ establishing the conspiracy.” Id. (quoting United States v. El-Mezain, 664 F.3d 467, 502 (5th Cir. 2011)).
Fairley argues that the government failed to establish that the statement was made during the course of the conspiracy or in furtherance of it. According to Fairley, the recorded statements were made in December 2012 and the conspiracy between Fairley and Fletcher ended in July 2011. Fairley further argues that because the conversations chiefly concern Fletcher’s attempt to recover money from Fairley, the two men were acting as adversaries and could not have been speaking in furtherance of a joint conspiracy. We review the district court’s ruling for abuse of discretion. United States v. Robinson, 367 F.3d 278, 291 (5th Cir. 2004).
Fairley’s argument misunderstands the nature of the coconspirator exception. Fairley focuses on the overt acts charged in the indictment as part of the conspiracy, which run only until August 2011. But “the evidentiary rule of conspiracy is founded on concepts of agency law” and therefore “differs from conspiracy as a crime.” El-Mezain, 664 F.3d at 503 (quoting United States v. Coe, 718 F.2d 830, 835 (7th Cir. 1983)). Accordingly, “a conspiracy [for the purpose of hearsay exclusion] may be shown ‘merely by engaging in a joint plan[ ] ... that was non-criminal in nature.’” Nelson, 732 F.3d at 516 (second alteration and omission in the original) (quoting El-Mezain, 664 F.3d at 502). At *214 trial, Fairley did not dispute that he worked with Fletcher to secure HUD grants. The government introduced considerable evidence to support a finding that Fairley and Fletcher were engaged in a joint venture, including signed documents and a- separate recorded conversation between Fletcher and a City of Hattiesburg employee.[18]

Fairley and Fletcher’s recorded conversations themselves confirm the continuing nature of the venture. Although contentious, the gist is Fletcher trying to collect money that he advanced to Fairley in the expectation he would be ¡reimbursed with HUD funds. This underscores rather than negates the ongoing nature of the venture: the' two men had not yet concluded their joint venture. . ■
Furthermore, during the calls, Fairley repeatedly references plans to continue working together- in the future. He says:
• “I know that these three,' that the four of us collectively [Fairley, Fletcher, Pinebelt, and another person], gonna find a way to complete the Fifth Street 'project and will find a way to complete the Sixth Street projects, such that the city and [HUD] will be happy with the process and happy with the money spent and the, and the turn out of the project, and release the money.”
• “[T]his has always been a money making proposition even now, in the future between [Interurban] and Pinebelt.”
• “[T]he next time when we, when do this ... on the Sixth Street house, ... we gonna have an understanding before we get started.” ■
• “1⅛ gonna move forward Fletch. I have heard you loud and clear. And, uh, I’m movin’ forward to get this ■ stujf completed so we can be on the same team. Get the monies paid back, that’s what I’m sayin’ to you. To get the monies that’s been allocated to us paid back.”
• “I just wanna make sure that as we do this thing now we goin’ forward. Now, I know there’s no [HUD] representative in this,' diggin’ in ...” (emphasis added).
These statements, combined with the government’s ample evidence of the existence of a conspiracy between ' Fairley ' and Fletcher, show that the conspiracy remained in effect at the time the conversations were recorded.
Fairley’s argument that the statements were not made in furtherance of the conspiracy also fails. We have repeatedly cautioned “that the ‘in furtherance’' requirement is not to be construed too strictly lest the purpose of the exception be defeated.” United States v. Cornett, 195 F.3d 776, 782 (5th Cir. 1999). Furthermore, “statements [made] in order to encourage loyalty and obedience among the conspirators [is] a purpose clearly in furtherance of the conspiracy.” United States v. Flores, 63 F.3d 1342, 1377 (5th Cir. 1995). Fletcher’s attempt to enforce his understanding of his bargain with Fairley is therefore a furtherance. See United States v. Graham, 711 F.3d 445, 454-55 (4th Cir. 2013) (discussions concerning attempt to collect a drug debt were made in furtherance of conspiracy).
Accordingly, we hold that the district court did not abuse its discretion by admitting the challenged recordings.
IV.
Finally, Fairley contests two sentencing factors applied by the district court. First, Fairley asserts that the court improperly calculated Fairley’s loss amount. Second, *215 Fairley maintains that the district court erred by enhancing his sentence for abuse of a position of trust. Neither argument is persuasive,
i. Loss Amount

The district court’s loss-amount calculation is a factual finding reviewed for clear error. United States v. Hebron, 684 F.3d 554, 560 (5th Cir. 2012). But the court’s method of calculating those losses is an application of the guidelines subject to de novo review. Id, The district court sentenced Fairley based on intended loss, which exceeded HUD’s actual loss. See ids="5882323" index="85" url="https://cite.case.law/f3d/684/554/#p560">id. (“The applicable loss is generally the greater of actual loss—which includes only reasonably foreseeable harm resulting from the fraud—and intended loss—which includes the harm intended to result from the offense.”). “[T]he guidelines emphasize the deference that must be shown to the sentencing judge, who is in a unique position to assess the applicable loss, so this court need only determine whether the district court made ‘a reasonable estimate of the loss.’” Id. (quoting U.S.S.G. § 2B1.1 cmt. 3(C)); see also United States v. Izydore, 167 F.3d 213, 222 (5th Cir. 1999) (“[T]he amount of loss need not be determined with precision.”).
The court calculated Fairley’s intended loss amount by combining: (1) its determination of the actual loss associated with the contract for the South Street and 6th Street properties, and (2) its estimate of the intended loss on a second HUD home renovation contract signed by Pinebelt in October 2011, but later voided by HUD. Specifically, as to the completed August 2010 contract, the court' subtracted $37,776,05 in legitimate labor and materials expenses from the total $98,000 received pursuant to the HUD grant and arrived at a loss of $60,223.96, For the uncompleted October 2011 contract, the court reduced the total value of that contract, $118,637.60, by 38.5%—consistent with the proportion of grants received for legitimate expenses in the first contract— for a loss of $72,962. In other words, the district court assumed for loss calculation purposes that, had the October.2011 contract not been rescinded, Fairley would have realized the same illicit gain as a percentage of the contract amount as he had under the August 2010 contract.[19]

Fairley contests both the district court’s method and its actual loss calculation. Regarding the calculation, Fairley maintains that the court should have credited his evidence concerning additional expenditures on the South Street and Fifth Street properties. The court rejected Fair-ley’s evidence, finding that it. included overheard expenses that .could not be reimbursed under the terms of the contract, as well as expenses for storm damage repair after the contract was completed.' The court instead credited the testimony of an IRS agent, who calculated Pinebelt’s total permissible costs under the contract as $37,776.05. The district court’s choice to rely on the credible testimony of the agent and other government witnesses, rather than Fairley’s competing experts, was not clearly erroneous. See United States v. Sotelo, 97 F.3d 782, 799 (5th Cir. 199,6) (“Credibility determinations in sentencing hearings ‘are peculiarly within the prov *216 ince of the trier-of-fact.’ ” (quoting United States v. Sarasti, 869 F.2d 805, 807 (5th Cir. 1989))).
Fairley also argues that he should have received credit for the actual value of the South Street and 5th Street properties. But Pinebelt was paid pursuant to a grant program that took no interest in the properties to be renovated. Although a later agreement between the City of Hatties-burg and Pinebelt contemplated foreclosure, this agreement was signed several months after Pinebelt was paid. Fairley presented no evidence that the City ever foreclosed or took any ownership in the property, or that HUD, the victim, would be reimbursed even if the city had. Accordingly, the district court concluded that the value of the South Street and 5th Street properties was “irrelevant.” This finding was not clearly erroneous.
As to the method of calculation, Fairley asserts that the district court im-permissibly speculated when it increased Fairley’s loss amount based on the uncompleted October 2011 contract. See Nelson, 732 F.3d at 520 (“[T]he calculation of intended loss cannot be ‘purely speculative.’ ” (quoting United States v. Roussel, 705 F.3d 184, 201 (5th Cir. 2013))). But we have repeatedly affirmed similar estimates based on unconsummated crimes. For instance, in United States v. John, the defendant, a bank employee, provided customer account information to associates who used the information to make fraudulent charges. 597 F.3d 263, 279 (5th Cir. 2010). Although only four accounts were charged, resulting in a total actual loss of $78,750, evidence showed that John had printed and disseminated information for seventy-six accounts. Id. The district court calculated John’s intended loss amount by aggregating the credit limits of all seventy-six accounts, a sum of nearly $1.5 million. Id. at 278-79. We found no reversible error. Id. at 281; see also United States v. Jones, 533 Fed.Appx. 448, 456-57 (5th Cir. 2013) (per curiam) (district court did not err in “extrapolating the $2,000 loss [the defendant] intended to inflict on the date of her arrest by an estimate of similar operations in which she was found to have engaged”). Here, there is no reason to believe that—after defrauding the government on one contract—Fairley and Fletcher intended to play it straight on the second contract. Sentencing Fairley based on a reasonable expected loss amount under the second HUD contract was far from speculation.
Because the district court’s method for calculating loss is consistent with past approaches approved by this court, and its conclusion is not clearly erroneous, Fair-ley’s argument on this point fails.
ii. Abuse of Position of Trust

Fairley also disputes the district court’s application of an enhancement for abuse of a position of trust pursuant to United States Sentencing Guidelines Manual § 3B1.3. Section 3B1.3 provides for a two point increase in the defendant’s offense level “[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense[.]” U.S.S.G. § 3B1.3. “This court applies a two-part test to determine whether there has been an abuse of trust: ‘(1) whether the defendant occupies a position of trust and (2) whether the defendant abused her position in a manner that significantly facilitated the commission or concealment of the offense.’ ” United States v. Miller, 607 F.3d 144, 148 (5th Cir. 2010) (quoting United States v. Kay, 513 F.3d 432, 459 (5th Cir. 2007)). Application of this enhancement is “a sophisticated factual determination” that we review for clear error. Pruett, 681 F.3d 232 at 248.

*217 We have repeatedly upheld application of the enhancement for abuse of a position of trust in similar contexts. For example, we have upheld its application to owners of licensed durable medical equipment (DME) provider companies that bill Medicaid and Medicare. The enhancement applies because Medicaid and Medicare “depend[] upon the honesty and forthrightness of the DME provider in its claim submissions!!.]” Miller, 607 F.3d at 150. Owners of such companies occupy a position of trust because “the government entrusts them] to provide good faith, accurate information in seeking reimbursement.” Id.; see also United States v. Nowlin, 640 Fed.Appx. 337, 349-50 (5th Cir. 2016) (per curiam) (district court did not err in applying § 3B1.3 to owner of DME company); United States v. Usman, 460 Fed.Appx. 414, 418-19 (5th Cir. 2012) (per curiam) (district court did not err in applying § 3B1.3 to owner of private ambulance company).
Fairley served as executive director of Pinebelt, an approved Community Housing Development Organization under HUD’s HOME Investment Partnerships Program. In this role, Fairley occupied a position of trust with respect to HUD that mirrors the role of a DME provider under Medicaid and Medicare. Testimony elicited at trial showed that HUD, through Hattiesburg, relied on Pi-nebelt’s representations of its own expenses in seeking reimbursement.[20] Further, Fairley’s position as director of a CHDO facilitated the commission of the offense: only CHDO’s are eligible to receive HOME funds. Accordingly, the district court’s application of the abuse of a position of trust enhancement was not clear error.
V.
For the forgoing reasons, we VACATE Fairley’s conviction on counts two and three and REMAND to the district court for further proceedings consistent with this opinion. We AFFIRM Fairley’s conviction on count one.

. See United States v. McRae, 795 F.3d 471, 483 (5th Cir. 2015) ("Our court’s practice when one, but not all counts, within a multi-part conviction has been vacated has generally .been to remand to allow the district court to resentence in the first instance.”).

. Fairley was also sentenced to 36 months of supervised release and was assessed a fine of $30,000, restitution of $60,223.95 and a $300 special assessment.

. Fletcher was indicted with Fairley, but pled guilty to a related charge before trial. Fletcher did not testify at Fairley’s trial.

, Fletcher’s charity raised money from third party donations. Fletcher profited from the scheme by shifting this money to his company, Interurban.

. The transcript for both counts reads: "On Count 2[/3] of the indictment, knowingly and willfully receiving or converting any money

. See also United States v. Zettl, 889 F.2d 51, 53 (4th Cir. 1989) ("Section 641 prohibits two separate acts. The first is to embezzle, steal, or knowingly convert United States property and the second is to sell, convey, or dispose of United States property without authority.”); United States v. Belt, 516 F.2d 873, 876 n.8 (8th Cir. 1975) ("In Milanovich the defendant had been charged with the distinct crimes of larceny under paragraph (1) of 18 U.S.C. [§ ] 641 and receiving stolen property under paragraph (2) of [§ ] 641 based on the same occurrence.”); United States v. Boyd, 446 F.2d 1267, 1272 (5th Cir. 1971) (stating, on appeal of conviction under § 641, that a portion of the jury charge "was intended to inform the jury of the difference between larceny and the crime charged—reception, retention and concealment”).

. Although Fairley argues that jury instruction errors as to counts two and three undermine his conviction under count one, he expressly disclaimed any argument that count one, as charged in tjie indictment, was independently insufficient.

. Any potential duplicity challenge is forfeited by Fairley’s failure to object-before the district court; See United States v. Stanford, 805 F.3d 557, 567 (5th Cir. 2015). '

. Fairley has forfeited any argument concerning the government's wholesale omission of the third element, which covers knowledge and intent. If he had raised the argument, we would likely reject it. In United States v. Lester, we upheld an indictment charging conversion of postal funds that "traced the exact language of the statute” but' did not include "a formal, express allegation of criminal intent.” 541 F.2d 499, 501 (5th Cir. 1976). We reasoned that ”[t]he term convert implies, by its very legal nature, some kind of willful purpose and wrongful intent in' the taking of property that does not belong to the converter,” Id, at 501-02, Accordingly, the indictment “was sufficient to apprise the defendant of the charges against her and it was sufficient to imply an allegation of wrongful intent.” Id.; see also United States v. Rainey, 757 F.3d 234, 248 (5th Cir. 2014) (vacating dismissal of indictment where the allegations did “not exactly recite that Rainey knew a congressional investigation was pending, but the indictment as a whole fairly import[ed] the element,” (alterations and quotation marks omitted)); United States v. Henry, 288 F.3d 657, 662 (5th Cir. 2002) (“While it is true that the allegations may not necessarily encompass a finding of knowledge, we have determined that a knowledge requirement may be inferred.”),

. Fairley contends that he is spared plain error review because the district court reject- . ed proposed alternative instructions. The record does not reflect this. More importantly, even if Fairley did propose other language, "[a] party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection .... Failure to object in accordance with this rule precludes appellate review, except as permitted under Rule 52(b).” Fed. R. Crim. P. 30(d). At oral argument, Fairley’s attorney suggested that trial counsel not only proposed alternative language, but also specifically objected to the § 641 "state of mind” instruction at the charge conference. As simultaneously acknowledged at oral argument, this assertion is not reflected in the record before us. It also contradicts Fairley's brief, which states "the defense did not object at trial either to the instructions or to the language of the verdict form[.]”

. The court later corrected its repetition of "converted.”

. The district court made very clear that the jury did not need to find that Fairley did all of these four acts, and could convict on a unanimous finding that Fairley did any one of them:
The government-does not have to prove all of these for you to return a guilty verdict on these charges. Proof beyond a reasonable doubt on one is enough. But in order to return a ver—a guilty verdict, all of you must agree on the same one that has been proven. All of you must agree that the government proved beyond a reasonable doubt that the defendant knowingly and willfully received money, property or thing of value belonging to the United States, or all of you must agree that the government proved beyond a reasonable doubt that the defendant knowingly aAd willfully concealed money, property or thing of value belonging to the United States, or all of you must agree that the government proved beyond a reasonable doubt that the defendant knowingly and willfully retained money, property or thing of value belonging to the United States, or all of you must agree that the government proved beyond a reasonable doubt that the defendant knowingly and willfully converted money, property or thing of value belonging to the United States,

. This discussion compares the jury’s actual instruction to a proper instruction for conversion under paragraph one of § 641, The government has never argued that the instructions were proper under a paragraph two receiving theory, which, as noted, requires that the defendant acted "knowing [the government property] to have been embezzled, stolen, purloined or converted!.]" § 641.

. In its brief before this court, the government confirms its belief that counts, two and three do not merely charge Fairley with theft of government money under § 641’s first paragraph. The government asserts that “[t]he [Fifth Circuit] pattern instruction for § 641 addresses only the first paragraph of the statute and thus only a modified version would apply to the charges in this case” (emphasis added). At oral argument, the government appeared to still be unsure what crime Fairley was actually convicted of. When pressed, the government's attorney said: "I think that the best reading of the result is that [Fairley] was guilty of conversion.”

. We also observe that the government’s interpretation of the notes is not the only plausible one. For instance, maybe the jury found that "retaining” and "concealing” were not supported by the evidence, crossed them out, unanimously found that one of the remaining verbs was present, realized they had a conviction, and concluded deliberations without ever considering the final verb. Or maybe the foreperson made the alteration on his or her own. Or maybe the jury did exactly what the government assumes. On this record, we simply cannot know.

. Fairley also argues that the jury instruction impermissibly enlarged the indictment by including “receiving” as one of Fairley’s criminal acts. Constructive amendment, however, "occurs if the jury is permitted to convict on 'an alternative basis permitted by the statute but not charged in the indictment.’ ” United States v. Daniels, 252 F.3d 411, 414 (5th Cir. 2001) (emphasis added) (quoting United States v. Robles-Vertiz, 155 F.3d 725, 728 (5th Cir. 1998)). Because we find that the jury instructions misstated the law, any constructive amendment is beside the point.

. Notably, Fairley's opening brief devotes only a single sentence—with no supporting authority—to arguing that errors in counts two and three invalidated count one. Fairley does expand this argument in his reply brief, but still fails to cite authority. In our independent analysis, we note that our court reversed a conspiracy conviction based on an erroneous instruction in a separate but related substantive count. See United States v. Smithers, 27 F.3d 142, 146 (5th Cir. 1994) (flawed jury instruction as to substantive offense “also undermine[d]" related conspiracy charge). But Fairley may well not have cited Smithers perceiving that it is inapposite because (1) Smith-ers preserved the error, and (2) there is no indication that Smithers’ conspiracy count was in any way distinct from the flawed substantive count. Id. at 144 n.4, 145-47.

. Fairley did not object to admission of this recording.

. $60,223.95 $72,962 $98,000 “ $118,637.60 = 61.5%

. One of Fairley's witnesses, a HUD consultant, agreed that HUD "assume[s]” that the money given to a CHDO "is going to be spent in a way that’s consistent with the program[.]”